733 So.2d 1174 (1999)
Linda Tarver WRIGHT
v.
CALDWELL PARISH SCHOOL BOARD.
No. 98-C-1225.
Supreme Court of Louisiana.
March 2, 1999.
*1175 Richard P. Ieyoub, Atty. Gen., Iley H. Evans, Dist. Atty., Eugene Allen, Columbia, for Applicant.
Jon Keith Guice, Monroe, for Respondent.
VICTORY, J.[*]
We granted a writ filed by the Caldwell Parish School Board (the "Board") to determine whether the Board's failure to notify an assistant principal of non-renewal of her initial employment contract at least 120 days prior to that contract's termination requires the Board to offer her a new contract. After reviewing the record and the applicable law, we reverse the holding of the court of appeal and hold the Board is not required to offer her a new contract based on its failure to give 120 days notice. We remand the case to the court of appeal to consider other errors raised by the plaintiff.

FACTS AND PROCEDURAL HISTORY
On June 22, 1995, the Board offered Linda Tarver Wright ("Wright"), a nontenured teacher, a two-year contract as assistant principal at Caldwell Parish High School for the 1995-1996 and 1996-1997 school years. Based on unsatisfactory evaluations of Wright, on June 16, 1997, the Caldwell Parish superintendent of schools sent a letter to each member of the Board recommending that Wright's contract not be renewed. On June 19, 1997, the ten-member Board voted on whether or not to renew Wright's contract. After the vote resulted in a tie, the Board president declared Wright to be unemployed.
On July 2, 1997, Wright filed a petition of mandamus with the trial court seeking to compel the Board to offer her a new contract based on their alleged non-compliance with the Teacher Tenure Law. The trial court declined to issue the writ of mandamus. The court of appeal reversed, finding that the Board had a mandatory duty to negotiate and offer Wright a new contract because the Board did not notify Wright of termination of employment under her contract 120 days or more prior to the contract's termination as required by La. R.S. 17:444(B)(4)(c)(i). Wright v. Caldwell Parish School Bd., 30,448 (La. App. 2 Cir. 4/8/98), 711 So.2d 353. We granted a writ to consider the correctness of this ruling. Wright v. Caldwell Parish School Bd., 98-C-1225 (La. 10/16/98),726 So.2d 900.

DISCUSSION
"The Teacher Tenure Law (TTL), originally enacted by Act 100 of 1922 and amended and reenacted by Acts 58 and 79 of 1936, defines the status of Louisiana's public school teachers and outlines the procedures a school board must follow to discharge them." Rousselle v. Plaquemines Parish School Bd., 93-1916 (La.2/28/94), 633 So.2d 1235, 1241 (citing La. R.S. 17:441-446 (generally)); La. R.S. 17:461-464 (Orleans Parish); McCoy v. Tangipahoa Parish School Bd., 308 So.2d 382 (La.App. 1 Cir.1975), writ den., 310 So.2d 856 (La.1975); Comment, Louisiana's Teacher Tenure Act, 34 Loy.L.Rev. *1176 517 (1988). "The TTL gives to Louisiana's public school system teachers tenure in office and arms these permanent teachers with a shield protecting them against discharge, suspension or demotion for causes other than those provided by statute." 633 So.2d at 1241 (citing Reed v. Orleans Parish School Bd., 21 So.2d 895 (La.App. Orl.1945)). "It was intended to protect worthy teachers from `enforced yielding to the political preferences of those theretofore having the power to grant or withhold employment to them; and to vouchsafe to such teachers employment, after a long term of satisfactory service to the public, regardless of the vicissitudes of politics or the likes or dislikes of those charged with the administration of school affairs.'" 633 So.2d at 1242 (citing Andrews v. Union Parish School Bd., 184 So. 574 (La.App. 2 Cir.1938), aff'd, 191 La. 90, 184 So. 552 (1938)); Reed v. Orleans Parish School Bd., 21 So.2d at 898; see also Thorne v. Monroe City School Bd., 542 So.2d 490, 491-92 (La.1989) ("The need for tenure in lower education has been justified in order to prevent school boards from abusing superior bargaining power in contract negotiation, to provide stability within the teaching profession by assurance of continued service to experienced teachers, and to prevent dismissal for unfounded, political or partisan reasons." (Cites omitted)).
For example, under La. R.S. 17:442, each teacher serves a probationary term of three years. During that three year probationary period, the teacher can be discharged upon written recommendation of the superintendent accompanied by valid reasons therefore. A school board may discharge or decline to renew the contract of a probationary teacher without notice or a hearing. After the three year period, the teacher automatically becomes a permanent teacher. "Although the school board is not authorized to discharge a probationary teacher without any cause at all, ..., the discretion given to the school board in discharging, for valid reasons, teachers during their probationary terms is for the purpose of weeding out personnel whose attitude or performance, while perhaps not so flagrantly faulty as might be required for the discharge of a tenured teacher, indicates that it is undesirable for reasons of efficiency or harmony, among others, to grant them permanent status as members of out professional education force." McKenzie v. Webster Parish School Bd., 26,713 (La.App. 2 Cir. 4/5/95), 653 So.2d 215, 218, writ den., 95-1415 (La.9/22/95), 660 So.2d 472 (citing Ford v. Caldwell Parish School Bd., 541 So.2d 955 (La.App. 2 Cir.1989)). Permanent teachers are entitled to stricter substantive and procedural protections before they can be removed from office, including specific enumerated grounds for discharge, a hearing by the school board prior to discharge, and judicial review of the school board action.[1]
*1177 As a non-tenured teacher hired to take an administrative position as an assistant principal, Wright is also entitled to certain protections of the TTL. The provisions of La. R.S. 17:444(B) govern permanent and probationary teachers who are promoted to higher positions and other persons who are initially hired to take such positions.[2] Under La. R.S. 17:444(B)(1), permanent teachers who are promoted do not automatically attain permanent status in the new position, but instead retain their permanent status as teacher. When a probationary teacher is promoted to a higher position, she likewise does not attain permanent status in the higher position but the probationary period of her status as teacher continues to run after she is promoted and she automatically acquires permanent status as teacher at the end of the three year period. La. R.S. 17:444(B)(2). The provisions of La. R.S. 17:444(B)(3) govern persons hired into a position that pays a higher salary than that paid to a teacher:
Whenever a person is employed to take a position that pays a higher salary than that paid to a teacher in the system and the employment in the position higher salary requires a teaching certificate and/or any appropriate administrative/supervisory endorsement, all the provisions of this Subsection with regard to employment pursuant to a written contract containing performance objectives for a period of not more than four nor less than two years shall apply. Such a person shall, however, automatically acquire permanent status in the position of teacher after the successful completion of three years of service in the position for which he was hired provided the person is qualified to teach.
It is unclear from the record whether Wright was a probationary teacher or was even employed as a teacher when she became assistant principal. At oral argument, it was asserted that she was not a permanent teacher. In any event, the contract terms of each of these classes of persons are governed by La. R.S. 17:444(4). La. R.S. 17:444(4)(a)(i) provides that the employment shall be for a period of between two to four years, unless it is for a temporary position, and that the term be specified in a written contract containing performance objectives.
It is undisputed that the Board decided not to renew Wright's initial two year contract on July 19, 1997, three days before the contract would have terminated. The court of appeal found that this violated La. R.S. 17:444(c)(i), which provides as follows:
The board and the employee may enter into subsequent contracts of employment. Not less than one hundred and twenty days prior to the termination of such a contract, the superintendent shall notify the employee of termination of employment under such contract, or in lieu thereof the board and the employer may negotiate and enter into a contract for subsequent employment.
La. R.S. 17:444(c)(i) (emphasis added). The court of appeal found that "an employee in Ms. Wright's position was entitled to 120 days prior notice of the fact that her contract would not be renewed" and that because they failed to do so, the Board had a mandatory obligation to offer Wright a new contract. 711 So.2d at 356. We disagree.
A clear reading of La. R.S. 17:444(c)(i), which relates only to "subsequent contracts," allows the parties to enter into *1178 "subsequent contracts" and immediately thereafter provides that not less than 120 days prior to the termination of "such contract," the superintendent must notify the employee of termination under "such contract." Thus, it only requires a school board to give the employee 120 days notice prior to the end of the subsequent contract, not the initial contract. As argued by the Board, requiring the Board to give the employee 120 days notice during the initial contract would not give the Board enough time to properly evaluate the employee. However, when the employee is serving under a subsequent contract, he has already served between two and four years under his initial contract and has had sufficient time in service to be properly evaluated. In that case, 120 days notice of termination would be required.[3] This is consistent with the more stringent notice and discharge procedures for permanent teachers compared with the discretionary standards applicable to probationary teachers. See La. R.S. 17:442 and 443. Thus, the failure of the Board to give Wright 120 days notice that her initial contract would not be renewed does not obligate the Board to negotiate and offer Wright a subsequent contract.
Wright argues to this Court, as she did to the lower courts, that even if the 120 day notice provision does not obligate the Board to offer her a new contract, several other failures on the part of the Board do require such a result. While not specifically addressing each argument, the trial court denied plaintiff's requested relief. Plaintiff then raised each error to the court of appeal and the court of appeal found in favor of plaintiff on the 120 day notice issue. Therefore, we now remand this case to the court of appeal to address these other errors raised by plaintiff in her appeal.

DECREE
For the reasons stated herein, we reverse the judgment of the court of appeal and remand this case to the court of appeal to consider the other issues raised by plaintiff.
REVERSED AND REMANDED.
JOHNSON, J., dissents.
NOTES
[*] Traylor, J., not on panel, recused. Rule IV, Part 2, § 3.
[1] La. R.S. 17:443(A) provides as follows:

A permanent teacher shall not be removed from office except upon written and signed charges of willful neglect of duty, or incompetency or dishonesty, or of being a member of or contributing to any group, organization, movement or corporation that is by law or injunction prohibited from operating in the state of Louisiana, and then only if found guilty after a hearing by the school board of the parish or city as the case may be, which hearing may be private or public, at the option of the teacher. At least twenty days in advance of the date of the hearing, the superintendent with approval of the school board shall furnish the teacher with a copy of the written charges. Such statement of charges shall include a complete and detailed list of the specific reasons for such charges and shall include but not be limited to the following: date and place of alleged offense or offenses, names of individuals involved in or witnessing such offense or offenses, names of witnesses called or to be called to testify against the teacher at said hearing, and whether or not any such charges previously have been brought against the teacher. The teacher shall have the right to appear before the board with witnesses in his behalf and with counsel of his selection, all of whom shall be heard by the board at said hearing. For the purpose of conducting hearings hereunder the board shall have the power to issue subpoenas to compel the attendance of all witnesses on behalf of the teacher. Nothing herein contained shall impair the right of appeal to a court of competent jurisdiction.
[2] La. R.S. 17:444, the TTL provision regarding promotions to and employment into position of higher salary and tenure, is subdivided into sections A and B. Section A applies only to those teachers whose promotion to a higher position occurred prior to July 1, 1985. Section B applies only to those promotions to or employment in a higher position occurred after August 1, 1985. Rousselle v. Plaquemines Parish School Bd., supra at 1242.
[3] In Russelle, a principal filed a writ of mandamus claiming that the school board wrongfully failed to renew his initial contract because the superintendent had recommended that his contract be renewed. Although the principal was not given 60 days notice as was then required by statute, his contract provided that "the failure to give Appointee written notice at least sixty (60) days prior to the expiration date of this contract shall not operate to renew this contract and appointment to be extended on a day-to-day basis until sixty (60) days have passed since such notice was given." His contract was thus extended on a day-to-day basis until the 60 days had passed. The principal did not argue that failure to give 60 days notice mandated that his contract be renewed and thus we never addressed the issue. Because we decide today that the 120 day notice period does not apply during the initial contract, we do not reach the issue of whether failure to give 120 days notice during a subsequent contract requires the school board to renew the contract or merely extends the subsequent contract for 120 days from the date the notice is given.