STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

12-488


RODNEY IRCHIRL

VERSUS

NATCHITOCHES PARISH SCHOOL BOARD, ET AL.


**********


APPEAL FROM THE
TENTH JUDICIAL DISTRICT COURT
PARISH OF NATCHITOCHES, NO. 83,790
HONORABLE ERIC R. HARRINGTON, DISTRICT JUDGE


**********


PHYLLIS M. KEATY
JUDGE


**********


Court composed of Oswald A. Decuir, Billy Howard Ezell, and Phyllis M. Keaty, Judges.


AFFIRMED.

Robert L. Hammonds
Pamela Wescovich Dill
Hammonds, Sills, Adkins & Guice
Post Office Box 65236
Baton Rouge, Louisiana 70896
(225) 923-3462
Counsel for Defendants/Appellees:
	Natchitoches Parish School Board
	Dr. Derwood Duke

Rodney Irchirl
In Proper Person
256 Water Turkey Road
Natchitoches, Louisiana  71457
(318) 357-7698
Plaintiff/Appellant

**KEATY, Judge.**

Rodney Irchirl appeals from a trial court judgment affirming his termination by the Natchitoches Parish School Board (Board). For the following reasons, we affirm.

## FACTS AND PROCEDURAL HISTORY

Irchirl was a guidance counselor at Natchitoches Central High School (NCH) during the 2008-09 school year. By letter dated June 5, 2009, School Board Superintendent Dr. Edwina Murphy notified Irchirl that the Board had approved a resolution setting a hearing for July 1, 2009, to consider charges brought against him.[1] The resolution was attached to the letter, along with a detailed listing of the ten willful neglect of duty charges levied against him.[2] The hearing was continued at Irchirl's request to August 1, 2009. The hearing eventually concluded on September 30, 2009, after spanning over nine sessions and fifty hours of testimony. At the conclusion of the hearing, the Board voted and found Irchirl guilty of charges four, five, six, eight, nine, and ten. Those charges can be summarized as follows:

- Charge Number 4 – Failure to coordinate accurate records of student grades, including the verification and printing of report cards by: 1) failing to check for missing grades prior to printing report cards; 2) issuing report cards with missing grades and inaccurate grade point averages (GPAs); 3) unilaterally setting an unauthorized date for turning in senior grades; and 4) failing to obtain and post missing grades.

- Charge Number 5 – Failure to coordinate accurate records of student grades, including maintaining and updating records related to graduation for one-third of the senior class by: 1) failing to timely verify students who would not graduate; 2) refusing and/or failing to post grades on seniors' transcripts and to timely prepare and print same.

---

[1] The letter contains Irchirl's signature and a notation indicating that it was signed by him on June 11, 2009.

[2] The letter was admitted into evidence as Supt. 1; the Board's resolution was admitted as Supt. 1-A; and the list of the ten neglect of duty charges waged against Irchirl were admitted as Supt. 1-B. Note: The Superintendent withdrew charge three before the tenure hearing began.

- Charge Number 6 – Failure to demonstrate respect for all individuals by establishing working relationships with colleagues and others, including engaging in respectful interaction and team work with other guidance counselors and teachers. Failure to perform his duties by engaging in the following unprofessional behaviors: 1) demonstrating disrespect to the department head on multiple occasions; 2) being insubordinate to his department head and principal by refusing to answer questions regarding, among other things, the posting of grades to seniors' transcripts and the providing of necessary information for graduation participation; and 3) regularly engaging in unacceptable, argumentative, confrontational, and/or disrespectful conduct toward his department head, other counselors, and teachers.

- Charge Number 8 – Failure to adhere to the general policies and procedures applicable to him as a guidance counselor at NCH as follows: 1) refusing and/or failing to inform his department head, school administration, or other counselors of his location at all times during the school day and, thus, being unavailable and/or could not be located for significant periods of time; 2) absenting himself from his office regularly during the lunch period; and 3) failing to maintain and open door policy.

- Charge Number 9 - Failure to adhere to the general policies and procedures applicable to him as a guidance counselor at NCH by resisting compliance and/or failing to comply with standard operating procedures with the guidance department, such as: 1) refusing to adhere to the division of students amongst the counselors; 2) changing the schedules of students not assigned to him; 3) improperly investigation a teacher; and 4) demonstrating a consistent inability to follow the directives of his department head and principal.

- Charge Number 10 - Failure to adhere to the general policies and procedures applicable to him as a guidance counselor at NCH by resisting compliance and/or failing to comply with standard operating procedures with the guidance department, such as: 1) refusing to input custody information in ProComm; 2) inexplicably ordering large quantities of ACT waiver forms and refusing to voluntarily allow other counselors to use the ordered forms; 3) failing to effectively organize and implement a schedule for the ePortal exercise; and 4) demonstrating a consistent inability to follow the directives of his department head and principal.

On October 1, 2009, Irchirl was notified by certified letter that his employment had been terminated.

Irchirl filed a timely appeal pursuant to La.R.S. 17:443[3] with the Tenth Judicial District Court. After reviewing the exhibits and the briefs filed by the parties, the trial court affirmed the Board's action, finding that there was

---

[3] This statute is known as the Teacher Tenure Law (TTL).

2

substantial evidence to support the Board's finding of willful neglect of duty on each of the six charges sustained against him. Irchirl, in proper person, now seeks review in this court, alleging eight assignments of error which, as Irchirl agreed at oral arguments, can be resolved by addressing the following issues: 1) whether the Board complied with the statutory formalities under the TTL; and 2) whether the Board's findings were supported by substantial evidence.

## DISCUSSION

Louisiana Revised Statutes 17:443(A) governs the dismissal of tenured teachers[4] and provides, in pertinent part, that:

> A permanent teacher shall not be removed from office except upon written and signed charges of willful neglect of duty, or incompetency, dishonesty, or immorality . . . and then only if found guilty after a hearing by the school board of the parish or city, as the case may be, which hearing may be private or public, at the option of the teacher. At least twenty days in advance of the date of the hearing, the superintendent with approval of the school board shall furnish the teacher with a copy of the written charges. Such statement of charges shall include a complete and detailed list of the specific reasons for such charges and shall include but not be limited to the following: date and place of alleged offense or offenses, names of individuals involved in or witnessing such offense or offenses, names of witnesses called or to be called to testify against the teacher at said hearing, and whether or not any such charges previously have been brought against the teacher. The teacher shall have the right to appear before the board with witnesses in his behalf and with counsel of his selection, all of whom shall be heard by the board at said hearing.

In *Wise v. Bossier Parish School Board*, 02-1525, pp. 5-7 (La. 6/27/03), 851 So.2d 1090, 1094-95 (citations omitted) (footnote omitted), the Louisiana Supreme Court wrote:

> [J]udicial review of tenure proceedings must be limited to an inquiry of whether the School Board complied with the statutory formalities under Louisiana's Teacher Tenure Law and whether the School Board's findings were supported by substantial evidence. "'Substantial evidence' has been defined as 'evidence of such quality and weight that reasonable and fair-minded men in exercise of impartial judgment might reach different conclusions.'" In

---

[4]At the September 30, 2009 hearing, Irchirl, through counsel, stipulated that he was a tenured teacher under the TTL.

3

conducting such an examination, the district court must give great deference to the school board's findings of fact and credibility. Reasons for dismissal are largely in the sound discretion of the school board. Thus, the school board's judgment should not be reversed in the absence of a clear showing of abuse of discretion. Generally, an abuse of discretion results from a conclusion reached capriciously or in an arbitrary manner. The word "arbitrary" implies a disregard of evidence or of the proper weight thereof. A conclusion is "capricious" when there is no substantial evidence to support it or the conclusion is contrary to substantiated competent evidence.

The district court may not substitute its judgment for that of the school board or interfere with the school board's good faith exercise of discretion. The district court's responsibility in such a case is to determine whether the school board's action was supported by substantial evidence, or conversely, constituted an arbitrary decision and thus an abuse of discretion. As with the district court, a court of appeal may not reverse the decision of a district court unless it finds the school board's termination proceedings failed to comply with statutory formalities and/or the school board's findings were not supported by substantial evidence.

## *Compliance with Teacher Tenure Law*

Irchirl complains that the Board failed to comply with the TTL in that: 1) the Board failed to provide him with the specific dates of the alleged offenses; 2) the charges against him lacked the details and specificities required by the statute; 3) the Board failed to comply with La.R.S. 17:3884(2) by failing to grant him a pre-suspension opportunity to respond to discrepancies in his end-of-the-year evaluation; 4) the Board erred in including charges under La.R.S. 17:444 in the same document that charged him under La.R.S. 17:443; 5) the Board was allowed to call an unlisted witness to testify against him; 6) the Board denied him an opportunity to present relevant rebuttal evidence; and 7) his termination notice was legally insufficient.

The Board counters that the trial court correctly held that none of Irchirl's assigned errors had merit because the Board provided him with all the procedural rights afforded by the TTL. More specifically, Irchirl was represented by counsel at each of the nine hearing sessions and was given extreme latitude to present his

defense, he was allowed to testify at length in his own defense, and he was allowed to call witnesses to testify on his behalf. Finally, the Board suggests that this court disregard the issue regarding its alleged violation of La.R.S. 17:3884(2) because Irchirl raised the issue for the first time on appeal.

"'[D]ue process is not a technical concept with a fixed content unrelated to the time, place and circumstances.' Rather, it requires the implementation of flexible rules which may yield to the demands of the particular situation." *Rubin v. Lafayette Parish Sch. Bd.*, 93-473, p. 9 (La.App. 3 Cir. 12/14/94), 649 So.2d 1003, 1010-11 (quoting *Wilson v. City of New Orleans*, 479 So.2d 891 (La.1985)), *writ denied*, 95-845 (La. 5/12/95), 654 So.2d 351. *See also*, *Johns v. Jefferson Davis Parish School Bd.*, 154 So.2d 581 (La.App. 3 Cir. 1963) (Statutory provision for formal notice and hearing on charges against teacher contemplates reasonable and substantial compliance with general principle of due process of law which requires that teacher be given formal notice of charges against him made with sufficient specificity that he may prepare any defense he may have.).

In concluding that the Board's actions "were in compliance with [La.R.S. 17:443]," the trial court noted that Irchirl received a letter from the superintendent on June 11, 2009, notifying him that a hearing would be held on July 1, 2009, regarding charges brought against him. The trial court described the document attached to that letter which listed the charges against Irchirl as being "detailed." Noting that the hearing had been continued at Irchirl's request from July 1 to August 1, 2009, and that the hearing had been held over nine separate days, the trial court found that "Irchirl had the extended opportunity far beyond the 20 days provided by the statute to prepare a defense against the allegations set forth in Supt. 1-B, which the court finds to be in compliance with the statute."

5

After having read the entire record, including all of the exhibits and the transcripts of the nine days of testimony received at the tenure hearing, we are convinced that the Board fully complied with the mandates of the TTL. The list of charges found in Supt. 1-B included the specific reasons for each charge and the names of witnesses who might be called to testify in support of each charge. While the Board listed the date of each alleged offense as "the 2008-2009 school year" rather than as occurring on a particular date, the Board went into great detail in providing the specific reasons for each charge in Supt. 1-B. In addition, the Board backed up the charges with specific witness testimony pinpointing the time frames relative to each of the charges. Given the continuing nature of the charges, we concur with the trial court's finding that the Board complied with the TTL with respect to providing Irchirl with detailed and specific charges.

With respect to Irchirl's claim that the Board failed to comply with La.R.S. 17:3884(2) by not granting him a pre-suspension opportunity to respond to discrepancies in his end-of-the-year evaluation, we note that Irchirl disputes the Board's assertion that he did not raise the issue before the trial court. Regardless of whether he did so or not, we conclude that once Superintendent Murphy decided to file written charges of neglect of duty against him and the Board had approved those charges, La.R.S. 17:3884(2) was no longer applicable to the situation and the Board was instead required to comply with the TTL, which, as we have found, it did. Irchirl has not offered any specific jurisprudence to the contrary. The Board did not err in not giving Irchirl an opportunity to respond to discrepancies in his end-of-the-year evaluation before conducting the tenure hearing. Moreover, the record indicates that although the 2009-10 school year commenced while the charges were still pending against Irchirl, he continued to be paid by the Board

6

throughout the pendency of his tenure hearing even though he did not resume his duties as a counselor at NCH.

Irchirl asserts that the Board erred in that the charges against him included reasons for terminating both a promotional appointee, under La.R.S. 17:444, and a tenured teacher, under La.R.S. 17:443. We disagree. The Board presented evidence that, out of an abundance of caution, Superintendent Murphy included language in the charges against Irchirl to include reasons to terminate him as a teacher, i.e., for willful neglect of duty, and as a promotional employee, i.e., for inefficiency and/or failure to comply with performance objectives. At the start of the hearings, the Board attempted to get Irchirl's counsel to stipulate under which statutory provision Irchirl wished to be adjudged. Although Irchirl's counsel did eventually enter into a stipulation that his client was a teacher and wished to be adjudged according to the TTL, he did not do so until the final session of the hearing. Given the circumstances, we conclude that the Board did not err by including alternative charges against Irchirl. Our conclusion is bolstered by the fact that, under either statute, the bases of the charges against Irchirl were the exact same alleged behavior.

Irchirl complains that the Board was improperly allowed to call an unlisted witness to testify against him. The Board points out that the witness referred to, Dennis Breland, was called as a rebuttal witness. In addition, on the first day of the hearings, Irchirl named Mr. Breland as one of his "may call" witnesses. Viewing the situation in that light, we conclude that Irchirl was not prejudiced by and the Board did not violate the TTL by calling Mr. Breland as a witness.

Irchirl next asserts that the Board violated the TTL by denying him an opportunity to present evidence that the two other guidance counselors at NCH also turned in senior transcripts containing the same issues that he was being

7

punished for in these proceedings. The Board counters that it did not err in excluding the evidence because the documents were offered to prove the misconduct of other individuals. We conclude that the Board did not err in excluding the documents sought to be offered by Irchirl in rebuttal as those documents were wholly irrelevant to the whether Irchirl was guilty of the complained of conduct.

Finally, relying on *Serignet v. Livingston Parish School Board*, 282 So.2d 761 (La.App. 1 Cir. 1973), Irchirl claims that the Board violated the TTL because his October 1, 2009 termination notice was legally insufficient in that it failed to include the specific reasons upon which the Board recommended his termination, thereby making it impossible for him to mount an adequate appeal. The Board counters that because Irchirl had been provided with the detailed charges against him on June 11, 2009, and because he was present at all nine of the hearing sessions when those charges were addressed, "he cannot credibly claim that he was not fully aware of the 'charges' to which the [termination] notice referred."

Louisiana Revised Statutes 17:443(B) provides, in pertinent part, as follows:

> If a permanent teacher is found guilty by a school board, after due and legal hearing as provided herein, on charges of willful neglect of duty . . . and ordered removed from office, or disciplined by the board, the superintendent with approval of the board shall furnish to the teacher a written statement of recommendation of removal or discipline, which shall include but not be limited to the exact reason(s), offense(s), or instance(s) upon which the recommendation is based.

In *Serignet*, the school board was found to have violated La.R.S. 17:442, which provides that a probationary teacher may be dismissed upon the written recommendation of the superintendent accompanied by valid reasons therefor. Serignet was dismissed after receiving a letter that informed him that he was being dismissed for incompetency and willful neglect of duty. Attached to the letter was

a resolution of the school board which stated that at its April 5, 1971 meeting, it had, upon the written recommendation of the superintendent, unanimously adopted a resolution to discharge Serignet. The first circuit found that the charges contained in the dismissal notice were mere conclusions and that no detailed charges existed at the time of Serignet's discharge. Instead, the school board did not provide Serignet with the reasons for his dismissal until he propounded interrogatories to it in February of 1972 and long after his dismissal, requesting "the detailing of specific acts constituting the alleged incompetency and willful neglect of duty." *Id.* at 762.

Here, Irchirl acknowledged that he received the charges against him on June 11, 2009. As stated above, those charges were detailed and specific and complied with the requirements of the TTL. When considered in conjunction with the charges provided to him in June of 2009, we find that the October 2009 termination notice provided to Irchirl complied with the TTL.

In sum, Irchirl has failed to prove that the Board did not comply with the TTL. Accordingly, we will now address Irchirl's claim that the Board erred in finding sufficient evidence to support his termination.

### *Substantial Evidence*

Irchirl claims that the Board's findings that he was guilty of six counts of willful neglect of duty was not supported by substantial evidence and thus were arbitrary and capricious. He further claims that the trial court erred in finding that there was substantial evidence to constitute willful neglect of duty on his part. The Board counters that the trial court was correct in its assessment of the evidence and that it did not err in affirming the Board's termination of Irchirl. It submits that Irchirl failed to prove that the Board's decision to terminate his employment was

an abuse of discretion or that it reached its decision in an arbitrary or capricious manner.

The evidence produced at the tenure hearing showed that Irchirl was assigned to counsel and advise the ninth graders at NCH. The tenth graders were assigned to counselor Jeff Johnson and the eleventh graders were assigned to counselor Wendy Byles. The senior class was divided equally amongst the three counselors, with each assigned approximately ninety seniors. Irchirl also had the responsibility of ensuring that the teachers at NCH timely entered grades, of posting those grades in the computer, and of printing report cards.

In Charge Number 4, the superintendent alleged that Irchirl failed to coordinate accurate records of student by: 1) failing to check for missing grades prior to printing report cards; 2) issuing report cards with missing grades and inaccurate GPA's; 3) unilaterally setting an unauthorized date for turning in senior grades; and 4) failing to obtain and post missing grades.

Byles was the head of the guidance department at NCH. She testified that at the beginning of the 2008-09 school year, she gave Irchirl charts to assist him in monitoring when the teachers turned in their grades. She directed Irchirl to give the completed chart to Principal David Elkins and he would handle the issue of teachers who were late turning in grades. Byles testified that despite her instructions, Irchirl did not use the charts. As a result, some report cards were printed and disseminated in March of 2009 and again in May of 2009 with incomplete and/or missing grades. Those incomplete and/or missing grades caused the students' GPAs to be inaccurate. According to Byles, the problem was exacerbated in March of 2009 because Irchirl scheduled himself to be out of town doing professional development on three days during the time when grades were due.

Byles stated that Irchirl was responsible for letting the school know which of his one-third of the seniors were qualified to graduate in order for the graduation ceremony to be properly planned. Byles said that Irchirl directed that the teachers turn in senior grades on May 11, 2009 by two p.m., which she found problematic because it impaired her ability to timely plan for the academic pep rally and the graduation ceremony.

Adrienne Theus, a computer specialist and long-time employee of the Board who worked at its central office, testified that when it was nearing time for senior transcripts to be posted, she contacted Irchirl about getting the "incompletes" removed. When Irchirl did not promptly address the problem, she contacted Elkins who asked her for instructions on how to correct the problem and who made the corrections himself. On another occasion, Byles contacted her about senior grades that Irchirl said he had posted but that she could not find in the computer. Theus checked the database, and no grades were posted. As a result, she walked Byles through the process of posting those grades, even though that task should have been completed by Irchirl. Theus later called Irchirl inquiring about whether he had posted the grades, and he assured her that he had done so. Theus explained that grades could be posted to NCH's database through two programs, either Procomm or M.T.S. She and Byles decided that they would talk with Irchirl about how he had entered the grades so that they could resolve any misunderstandings about the posting of grades to prevent a similar situation from repeating in the future. Theus recalled that during a conference call between her, Byles, and Irchirl, Irchirl left Byles' office and refused to explain how he had posted the grades.

Elkins testified that as the counselor responsible for grade reporting, Irchirl was supposed to make sure that every teacher had turned in their grades, and then print report cards and ensure that they were distributed on schedule. If a teacher

had not timely turned in grades, Irchirl was to talk to the teacher. If that teacher still did not turn in grades, Irchirl was to notify him. Elkins confirmed that Theus called him in March about the missing grades at NCH. He printed a report showing which students' grades were missing from which teachers. When he showed the report to Irchirl, he did not seem to understand the report or what he needed to do to resolve the problem, even though it was nearing the sixth grading period of the school year. Elkins testified that the problem of missing grades continued into the final grading period in May, and he was worried that the grades would not be finalized before the teachers left for the summer. Because Irchirl had not yet filled in the grades that were missing in the March report, Irchirl began to get "snowed under" and Elkins had to help enter missing grades into the computer.

After thoroughly reviewing the record, we find there is substantial evidence to support the Board's decision that Irchirl's failure to coordinate accurate records of student grades, as well as his failure to verify and print accurate report cards, amounted to willful neglect of duty on his part, thereby justifying its decision to terminate Irchirl. Although Irchirl disputed much of the testimony against him, he did not deny that he understood what was required of him with regard to his responsibility for seeing that grades were properly reported at NCH. Moreover, the law is clear that "the district court must give great deference to the school board's findings of fact and credibility." *Wise*, 851 So.2d at 1094 (citing *Arriola v. Orleans Parish Sch. Bd.*, 01-1878 (La. 2/26/02), 809 So.2d 932). Accordingly, the trial court did not err in in upholding the Board's decision to terminate Irchirl.

Even where a school board files numerous charges of willful neglect of duty against a teacher, neither the TTL nor the jurisprudence "mandate [that] all charges must be proven before termination may be imposed. To the contrary, it is sufficient to support termination if any one of the charges of willful neglect of duty

against the tenure teacher is sufficiently supported by the record." *Wise*, 851 So.2d at 1095. Because we find that Superintendent Murphy provided the Board with substantial evidence to support Charge Number 4, we need not address the remaining charges levied against him. *Id.*

## DECREE

For the foregoing reasons, the judgment of the trial court affirming the decision of the Natchitoches Parish School Board to terminate Rodney Irchirl is affirmed. All costs of this proceeding are assessed against Rodney Irchirl.

**AFFIRMED.**