GRAVOIS, J.
*999 Appellants, ten elementary and middle school principals employed by the Jefferson Parish Public School System, who were demoted by the Jefferson Parish School Board ("the School Board") following the 2011-12 school year, appeal a partial final judgment signed by the trial court on August 21, 2017 confirming their demotions.[1] For the following reasons, we affirm.
FACTS AND PROCEDURAL BACKGROUND
Appellants are Jackie Daniilidis, Simone Duhon, Julie Flattmann, Billie Gassen, Yvette Gauthreaux, Randi Hindman, Amelia Noel, Dodie Plaisance, Cherie Varisco, and Patti Waddell. Originally, on December 4, 2012, twelve principals (appellants plus Gloria Willis and Diane Nowik), filed a Petition for Damages and Declarative and Injunctive Relief against the School Board, alleging that their contracts of employment were breached by the School Board when they were removed from their principal positions following the 2011-12 school year, following a finding by the Superintendent that they were "incompetent" and/or "inefficient," as per La. R.S. 17:444(B). Another principal, Lisa Kendrick,[2] was added as a plaintiff in an Amended Petition filed on December 12, 2013. Ten of the principals are before this Court in the instant appeal; three principals' cases were not decided in the partial final judgment on appeal and thus their claims remain pending in the district court proceeding.[3] Eight of the appellants were removed as principals following the expiration of their contracts at the end of the 2011-12 school year.[4] Two of the appellants were removed as principals also at the end of the 2011-12 school year, but during the unexpired terms of their contracts.[5]
In their petition as amended, appellants alleged that Dr. James Meza, the Superintendent of Schools for Jefferson Parish, and the School Board, in adopting an initial policy on March 11, 2010 and a revised policy on October 5, 2011 regarding the use of the principals' "targeted growth scores" to determine competency, improperly and impermissibly unilaterally changed or modified their existing contracts, holding them accountable for matters that were not a part of their existing contracts (specifically, the "achievement *1000 of" their respective schools' growth target scores, rather than the "facilitation of" their respective schools' achievement of their growth target scores, as found in the policy in effect when their contracts were confected), applied those changes retroactively, and used those changes as a basis to find them incompetent and/or inefficient and to demote them from their positions as principal. Appellants also alleged that they were not given the required 120-days' notice prior to being demoted. Appellants also sought injunctive relief, seeking to enjoin the School Board from "maintaining its policy and/or practice of arbitrarily and capriciously terminating and/or demoting them in violation of state law and/or [the School Board's] own policies." Appellants also sought reinstatement to their positions of principal and damages. In lieu of reinstatement, appellants sought front pay.
In response, the School Board argued that it has always had the power to remove or demote principals for incompetence and/or inefficiency, terms that are used but not defined in either the contracts at issue or La. R.S. 17:444(B), and that the School Board's decisions to uphold the Superintendent's decisions not to renew appellants' contracts (or respectively remove two of them from their positions mid-contract) complied with all legal and statutory requirements, including notice and due process. The School Board argued that nothing in appellants' contracts suggested that the failure to meet their respective schools' growth target scores could not be considered when determining whether the respective principal was incompetent and/or inefficient and thus had met that criteria for removal. It further argued that the 120-days' notice requirement in La. R.S. 17:444(B)(4)(c)(i) does not apply when the principal is removed from her position for cause under La. R.S. l7:444(B)(4)(c)(iii) in the middle of the contract term, but rather only applied when an expiring contract would not be renewed.
All ten appellants received "charge letters" from the Superintendent notifying them of their impending removal.[6] Of the ten appellants who are a part of this appeal, six appellants ultimately had a hearing before the School Board regarding the charges of incompetency and/or inefficiency forming the basis for their contracts' non-renewals or their terminations mid-contract.[7] Because the remaining four appellants all elected to retire at the end of the 2011-12 school year in lieu of being removed and reassigned to another position, they were not offered hearings before the School Board.[8] The Superintendent supported his decisions to remove the principals with the introduction of the relevant School Board policies, the principals' respective schools' report cards from the prior 3-4 years, which included whether the principals' respective schools had met their growth targets or had shown progress, and other documentary evidence, as well as testimony from the School System's chief human capital officer and the principals' network executive directors. Appellants' counsel appeared at the hearings, but waived appellants' appearances, called no witnesses, and offered no evidence to refute the School Board's evidence supporting the Superintendent's determinations *1001 that the principals were incompetent and/or inefficient as per La. R.S. 17:444(B).[9]
After the hearings before the School Board resulted in the confirmation of the Superintendent's decisions to remove appellants from their respective positions as principal, appellants filed suit in the district court as noted above. Following a hearing held on April 12, 2016, the trial court in a judgment signed on June 13, 2016 held that the adoption and revision of the policy in question by the School Board during the contract periods in question and the resultant use of State targeted growth scores to determine incompetence and/or inefficiency did not violate the applicable statute ( La. R.S. 17:444(B) ), or the principals' contracts. The trial court implicitly rejected appellants' retroactivity arguments. The June 13, 2016 judgment was amended on July 25, 2016 to provide that the School was not authorized to remove the eight principals who were removed at the expiration of their contract terms without providing them with 120-days' notice prior to the terminations of their contracts, and that the two principals who were terminated during the terms of their contracts were entitled to a fair hearing and reasonable notice prior to the terminations of their contracts. The subsequent partial final judgment of August 21, 2017 under review herein awarded the eight appellants whose contracts were not renewed 120 days of pay in lieu of proper notice. The judgment also awarded the two appellants who were removed during the terms of their contracts lost wages from the date of their removals (June 30, 2012) through the dates of their respective hearings before the School Board. The trial court also held that appellants' contracts (those whose contracts were not renewed) did not reconduct for another two-year term, thus denying appellants' request for reinstatement and full back pay.
On appeal, appellants argue that the trial court erred in three respects. First, they argue that the trial court erred in finding that the School Board could unilaterally modify the existing contracts between the School Board and appellants by incorporating the use of State targeted growth scores into their existing contracts. Second, they argue that the trial court erred in holding that the modified contracts could be applied retroactively to hold appellants accountable for the performance of duties and responsibilities that were not part of their existing contracts. Third, appellants argue that the trial court erred in finding that their employment contracts reconducted for a period of only 120 days, rather than the entire contract period of two years.
STANDARD OF REVIEW
In Spears v. Beauregard Par. Sch. Bd ., 02-2870 (La. 6/27/03), 848 So.2d 540, 544, the Louisiana Supreme Court explained the standard of review in tenure proceedings, to-wit:
In Howell v. Winn Parish School Bd. , 332 So.2d 822 (La. 1976), we held that judicial review of tenure proceedings must be limited to an inquiry of whether the School Board complied with the statutory formalities under Louisiana's Teacher Tenure Law and whether the School Board's findings were supported by substantial evidence.... In conducting such an examination, the district court must give great deference to the school board's findings of fact and credibility.
*1002 Arriola v. Orleans Parish Sch. Bd ., 01-1878 (La. 2/26/02), 809 So.2d 932, 941. Reasons for dismissal are largely in the sound discretion of the school board. Gaulden v. Lincoln Parish School Board , 554 So.2d 152, 157 (La. App. 2 Cir. 1989), writ denied , 559 So.2d 126 (La. 1990). Thus, the school board's judgment should not be reversed in the absence of a clear showing of abuse of discretion. Id. ...
The district court may not substitute its judgment for that of the school board or interfere with the school board's good faith exercise of discretion. Howard [v. West Baton Rouge Parish School Bd.] , 793 So.2d 153, at 153 [ (2000) ] ; McLaughlin v. Jefferson Parish School Board , 560 So.2d 585 (La. App. 5 Cir. 1990) ; Sampson v. Lincoln Parish School Board , 439 So.2d 454 (La. App. 2 Cir. 1983). The district court's responsibility in such a case is to determine whether the school board's action was supported by substantial evidence, or conversely, constituted an arbitrary decision and thus an abuse of discretion. Howell , 332 So.2d at 825 ; Roberts v. Rapides Parish School Board , 617 So.2d 187, 190 (La. App. 3 Cir.), writ denied , 619 So.2d 1068 (La. 1993). As with the district court, a court of appeal may not reverse the decision of a district court unless it finds the school board's termination proceedings failed to comply with statutory formalities and/or the school board's findings were not supported by substantial evidence. Wiley v. Richland Parish School Bd. , 476 So.2d 439, 442 (La. App. 2 Cir. 1985) ; Cook v. Natchitoches Parish Sch. Bd. , 342 So.2d 702 (La. App. 3 Cir. 1977), writ denied , 345 So.2d 52 (La. 1977) ; Mims v. West Baton Rouge Parish Sch. Bd. , 315 So.2d 349 (La. App. 1 Cir. 1975).
At issue in this case is the application of La. R.S. 17:444(B)(4)(c)(i)-(v), dealing with promotions to and employment by teachers into positions of higher salary and tenure, which provide:
(i) The board and the employee may enter into subsequent contracts of employment. Not less than one hundred and twenty days prior to the termination of such a contract, the superintendent shall notify the employee of termination of employment under such contract, or in lieu thereof the board and the employer may negotiate and enter into a contract for subsequent employment.
(ii) The employee may choose not to enter into subsequent contracts and may either terminate his employment or, if he has acquired permanent status as a teacher, resume employment as a teacher.
(iii) The employee shall be retained during the term of a contract unless the employee is found incompetent or inefficient or is found to have failed to fulfill the terms and performance objectives of his contract. However, before an employee can be removed during the contract period, he shall have the right to written charges and a fair hearing before the board after reasonable written notice.
(iv) The board shall negotiate and offer a new contract at the expiration of each existing contract unless the superintendent recommends against a new contract based on an evaluation of the contractee as provided for in R.S. 17:391.5, or unless failure to offer a new contract is based on a cause sufficient to support a mid-contract termination as provided in Item (iii) of this Subparagraph, or unless the position has been discontinued, or unless the position has been eliminated as *1003 a result of district reorganization, provided that should the position be re-created, the employee, if still employed by the board, shall have first right of refusal to the re-created position.
(v) If the contracted employee is removed or not renewed and had previously acquired permanent status as a teacher, he shall be returned to his former position as a teacher or to a position paying the same salary as his former position as a teacher unless he chooses to terminate his employment.
FIRST ASSIGNMENT OF ERROR
Breach of employment contract
Appellants argue that the School Board's use of their respective schools' State targeted growth scores to demote them for cause, "particularly since they were not mentioned in, or made a part of, the existing contract between [Appellants] and the Board," amounted to an impermissible and unlawful unilateral change of appellants' existing obligation under their employment contracts. Appellants argue that they had legitimate, binding contracts with the School Board, setting forth "in great detail" the duties and responsibilities of principals, and as such, the School Board was prevented from unilaterally modifying the contracts.
In response, the School Board argues that its adoption of the initial policy in 2010 and the revised policy in 2011 did not serve to alter the principals' contracts in any way. The School Board argues that all of the principals' contracts specifically authorize the removal of a principal who is found to be incompetent, a term that is not defined by the contracts or the relevant statute where it appears ( La. R.S. 17:444(B)(4)(c)(iii) ). The School Board further argues that nothing in the principals' contracts prohibited the School Board from using the State targeted growth scores to find the principals incompetent based upon their failure to meet their State targeted growth scores.[10]
As this case hinges partly on the interpretation of the principals' contracts, it is useful at this juncture to consider the law on contract interpretation. The interpretation of a contract is the determination of the common intent of the parties. La. C.C. art. 2045. For purposes of interpreting a contract, a contract is "ambiguous" when it lacks a provision bearing on the issue, its written terms are susceptible to more than one interpretation, there is uncertainty as to its provisions, or the parties' intent cannot be ascertained from the language used. Lomark, Inc. v. LavigneBaker Petroleum, LLC , 12-389 (La. App. 5 Cir. 2/21/13), 110 So.3d 1107, 1111. The common intent of the parties to a contract is determined in accordance with the general, ordinary, plain and popular meaning of the words used in the contract. Id. (Internal citations omitted.)
The record establishes that principals in the Jefferson Parish Public School System are employed under two-year contracts, which contain the option of being renewed upon their expiration. The ten appellants each entered into their original contracts on various dates, some prior to the passage of the 2010 initial policy at issue, and at least three who signed contracts in 2010 after the effective date of the 2010 initial *1004 policy.[11] Each year, every school operated by the School Board receives a School Performance Score ("SPS"), which is based 90 per cent on student achievement on State standardized tests. The State Department of Education also sets a performance goal for each school based on its SPS, which is called an SPS growth target. The SPS and SPS growth targets have been determined by the State Department of Education and considered by the School Board for many years prior to the adoption of the initial policy in 2010, as revised in 2011, and principals always received notice of their SPS growth targets.[12]
Appellants' contracts that were introduced into the record form two groups. The contracts of appellants Daniilidis (signed in 1998), Flattmann (signed in 2005), Gauthreaux (signed in 2005), Hindman (signed in 2007), Plaisance (signed in 2007), and Noel (signed in 2009) were signed prior to the adoption of the 2010 policy.[13] Each contained an identical Section IV, entitled "Performance Responsibilities of Appointee," which reads as follows:
(A) Appointee shall faithfully and fully discharge and perform all duties of the position to which he/she has been appointed as defined in the job description and measured by the instruments defined in the Personnel Evaluation Plan. The Appointee shall comply with all policies, rules, and regulations adopted by the School Board.
(B) In addition to those duties of employment set forth above, Appointee also acknowledges that, as a condition of continued employment under this contract, he/she must fully, efficiently, and timely achieve the specific performance objectives of this position as indicated on Jefferson Parish Schools Goals and Objectives Specification Form.
(Emphasis added.)
The contracts entered into evidence for appellants Duhon, Gassen, and Waddell were all signed in 2010, after the adoption of the aforementioned 2010 policy, but prior to the 2011 revision. Those contracts' Section IV, also entitled "Performance Responsibilities of Appointee," contain additional language italicized below specifically referring to the SPS growth target scores, to-wit:
(A) Appointee shall faithfully and fully discharge and perform all duties of the position to which he/she has been appointed as defined in the job description and measured by the instruments defined in the Personnel Evaluation Plan. The Appointee shall comply with all policies, rules, and regulations adopted by the School Board.
(B) The appointee will be supplied with his/her school performance growth target score (SPS) prior to the beginning of each school year. Should the appointee not meet her/his target score in any year, she *1005 (he) may be removed from the school. If the school fails to meet her SPS for three (3) consecutive years, the appointee will be removed from the school. The appointee may be placed in other positions of equal standing and salary or, if given an unsatisfactory evaluation, upon recommendation of the Superintendent to the Board, may be subject to demotion at the termination of the appointee's contract term. Demotion may be recommended by the Superintendent to the Board during the contract term if the superintendent believes that the appointee is incompetent or inefficient or has failed to fulfill the terms and performance objectives of her (his) contract and sufficient evidence exists to do so, after hearing before the Board.
(C) In addition to those duties of employment set forth above, Appointee also acknowledges that, as a condition of continued employment under this contract, he/she must fully, efficiently, and timely achieve the specific performance objectives of this position as indicated on Jefferson Parish Schools Goals and Objectives Specification Form.
As such, we see that the contracts themselves, both before and after 2010, do not set forth "in great detail" the principals' duties and responsibilities regarding performance, as claimed by appellants, but rather refer to documents outside of the contracts, such as the job title description and a goals and objectives specification form. Importantly, however, each contract in evidence specifically states in Section IV(A) that the principal "shall comply with all policies, rules, and regulations adopted by the School Board," and without regard to when such are adopted by the School Board.
As represented in the record, school growth targets have been made integral to a principal's performance duties since at least 2005. In a job title description from 2005 entered into evidence, the section entitled "Performance Responsibilities/Essential Functions" stated that principals were responsible for "[a ]ttain [ing ] the schools growth target as defined by the state's accountability program or show[ing] progress in reaching the target." (Emphasis added.) This requirement was revised later in 2005 to state that the principal was responsible for "[f ]acilita [ting ] the school's growth target as defined by the state's accountability program or show[ing] progress in reaching the target."[14] (Emphasis added.)
The new policy adopted in 2010, ostensibly during the contract terms of six of the subject principals, but prior to the latest contract terms of three of the subject principals, reads as follows:
Schools not meeting the state determined School Performance Growth Target Score.
Any school not meeting its state determined school performance growth target score (SPS) may be reconstituted. Any school not doing so for three (3) consecutive school years shall be reconstituted. Reconstitution will include, but necessarily be limited to the following:
1.) the replacement of the principal, and *1006 2.) the replacement of other administrators as deemed necessary by the Superintendent.
The principal and administrators, as deemed necessary, of a school not meeting its required SPS may be placed in other positions of equal standing and salary or, if given unsatisfactory evaluations, upon recommendation to the Board, may be subject to demotion at the termination of the principal's or administrator's contract term or, if demotion is recommended by the Superintendent during the contract term1 and sufficient evidence exists to do so, after hearing before the Board.
The replacement of teaching staff members of a school not making its required SPS growth target may be replaced as deemed necessary when a reconstitution takes place.
Teachers may re-interview for positions at the school. These interviews will be conducted by the newly assigned principal.
As seen, this policy allowed permissive (or discretionary) reconstitution when a school failed to meet its growth target for one year. The policy called for mandatory reconstitution in the event the school did not meet its growth target for three consecutive years.
The policy was revised in 2011 to read as follows, with the pertinent added language italicized:
Schools not meeting the state determined School Performance Growth Target Score.
Any school not meeting its state determined school performance growth target score (SPS) may be reconstituted. Any school not doing so for three (3) consecutive school years shall be reconstituted. Reconstitution will include but not necessarily be limited to the following:
1.) the replacement of the principal, and
2.) the replacement of other administrators as deemed necessary by the Superintendent.
The principal and administrators, as deemed necessary, of a school not meeting its required SPS Growth Target Score may be placed in other positions of equal standing and salary or, if given an unsatisfactory evaluation(s), upon recommendation to the Board, may be subject to demotion at the termination of the principal's or administrator's contract term or, if demotion is recommended by the Superintendent during the contract term and sufficient evidence exists to do so, after healing before the Board. The Superintendent may recommend an extension of a principal's contract in such cases if compelling evidence exists to do so.
The replacement of teaching staff members of a school not making its required SPS growth target may be replaced as deemed necessary when a reconstitution takes place.
Teachers may re-interview for positions at the school. These interviews will be conducted by the newly assigned principal.[15]
Upon review, we find no abuse of discretion in the trial court's finding that the contracts in question, both those entered into prior to 2010 and those that were signed in 2010, do not prohibit the use of *1007 SPS and/or SPS growth targets to determine a principal's competency. The contracts are unambiguous. The express language in all of the contracts states that "the Appointee shall comply with all policies, rules, and regulations adopted by the School Board." The contracts specifically incorporate all School Board policies. The contracts are not changed, therefore, because the School Board adopted the initial policy in 2010 regarding the use of SPS growth targets to evaluate a principal's competency. Certainly, as to appellants Duhon, Gassen, and Waddell's 2010 contracts, the 2010 policy's directive is specifically contained in their contracts, and therefore, as to them, there can be no credible argument made that they are not so bound.[16]
The ability to formulate policies such as the ones in question undoubtedly serves the School Board's duty to prioritize student achievement by providing for the reconstitution of schools that are failing or have not met their growth targets.[17] There is nothing in the principals' contracts that limits the School Board's powers to form specific policies to those ends, or limits the *1008 immediate application of new policies that are established during any appointee's contract period. This assignment of error is without merit.
SECOND ASSIGNMENT OF ERROR
Retroactive application of policy
Appellants next argue that the trial court's application of the policy to their schools' performances in the school years prior to its passage in 2010 (as far back as the 2008-09 school year) is a violation of law. Appellants argue that the general rule against retroactive application of legislative enactments is clear, and that the same rules that apply to legislative bodies apply to school boards, the latter being "agenc[ies] of the state of Louisiana." Appellants supply no legal authority for their position, however. Appellants cite to La. R.S. 17:81(C), entitled "General powers of local public school boards," which states:
C. Each city or parish school board is authorized to make such rules and regulations for its own government, not inconsistent with law or with the regulations of the State Board of Elementary and Secondary Education, as it may deem proper.
This section, however, does not, as appellants claim, address the school board's policy-making function, nor does it equate policy-making to the legislative process, or policies to legislation. Appellants cite Rousselle v. Plaquemines Par. Sch. Bd. , 93-1916 (La. 2/28/94), 633 So.2d 1235, 1238, in support of their position; however, Rousselle considered the retroactivity of an amendment to a statute, La. R.S. 17:444(B)(4)(c)(iv), not the retroactivity of a policy enacted by a school board.
Like the trial court, this Court need not reach the issue under the facts of this case of whether the 2010 initial policy was applied retroactively, i.e. , using growth target data from the school years prior to its establishment in 2010. The 2010 policy provides for discretionary reconstitution in the event a school did not meet its growth target once. The evidence in this record, which was uncontroverted, shows that each appellant failed to meet their growth target for the 2010-11 school year, as well as were projected to miss their growth target again in the 2011-12 school year.[18] Thus, each appellant was subject to demotion based entirely on their data from the school years subsequent to the School Board's establishment of the 2010 policy. This Court further notes that the 2010 contracts of appellants Duhon, Gassen, and Waddell explicitly included the 2010 policy, in Section IV(B), as noted above. Accordingly, this assignment of error is without merit.
THIRD ASSIGNMENT OF ERROR
Required notice of non-renewal/removal
Appellants finally argue that the failure to give them 120-days' notice of their contracts' non-renewal had the legal effect of reconducting their entire contract term; thus, they should have received new two-year contracts or payment for the same. The trial court disagreed, finding instead that the contracts reconducted for only 120 days, and awarded eight appellants *1009 damages in the amount of 120-days' salary.[19]
Each contract at issue contained the following provision in Section VII, entitled "Issuance of New Contract, Non-Renewal or Termination at Expiration of Term," to-wit:
(B) If the School Board decides not to renew this contract, it shall give the Appointee written notice thereof not less than one hundred twenty (120) days prior to the expiration date of this contract, provided, however, that failure to give Appointee written notice at least one hundred twenty (120) days prior to the expiration date of this contract shall not operate to renew this contract and appointment for an equivalent term, but shall only cause such contract and appointment to be extended on a day-by-day basis until one hundred twenty (120) days have passed since such notice was given.
(Emphasis added.)
This provision is unambiguous. The trial court followed this provision exactly as written, awarding the eight appellants whose contracts were not renewed (appellants Daniilidis, Duhon, Flattmann, Gassen, Gauthreaux, Plaisance, Varisco, and Waddell) 120-days' pay due to them for not having received the contractually required notice.
Appellants argue, however, that this contractual provision differs from La. R.S. 17:444(B)(4)(c)(i), quoted supra , which must control. However, La. R.S. 17:444(B)(4)(c)(i) is silent on the issue of reconduction. Thus, it does not require, as appellants claim, a reconduction of the contract if an appointee does not receive the 120-days' notice of non-renewal. Instead, La. R.S. 17:444(B)(4)(c)(v), quoted supra , requires that the removed principal be returned to his former status as a teacher, if the appointee had previously acquired permanent status as a teacher. The evidence in the record, summarized by a table entered into evidence, shows that each appellant who did not retire at the end of the 2011-12 school year was employed elsewhere by the School System at the time of the proceedings in the district court. Thus, it appears that every demoted principal who did not retire was in fact subsequently employed in the School System in accordance with La. R.S. 17:444(B)(4)(c)(v).
Appellants also argue that in Wright v. Caldwell Parish Sch. Bd. , 98-1225 (La. 3/2/99), 733 So.2d 1174, the Supreme Court found that the obligation to renew a contract when the appointee was not given the statutory 120-days' notice of non-renewal applied only to "subsequent" contracts and not the non-renewal of an initial contract. However, that Court did not consider the exact legal question before this Court, given that the tenure status of the principal/teacher in Wright was unknown. Thus, we find that case distinguishable and not controlling under the present facts.
The two remaining appellants who were removed during the term of their contracts (appellants Hindman and Noel) received lost wages from the date of their removal on June 30, 2012 until the dates of their hearings before the School Board. Like the other eight appellants, the two appellants who were removed from their positions as principal during the term of their contracts *1010 are not entitled to reconduction of their contracts. They are governed by La. R.S. 17:444(B)(4)(c)(iii), quoted supra , which only requires that a principal receive written charges and a fair hearing before the School Board before being removed from their positions. Accordingly, we find no merit to appellants' argument that they were entitled to reconduction of their contracts. This assignment of error is without merit.
CONCLUSION
For the foregoing reasons, the judgment under review is affirmed.
AFFIRMED

This is the parties' second appeal. Prior to this appeal, appellants devolutively appealed the trial court's July 25, 2016 judgment. On April 12, 2017, this Court dismissed that appeal without prejudice for lack of jurisdiction, finding that the judgment lacked proper decretal language and was not a final, appealable judgment. See Dodie Plaisance, et al. vs. Jefferson Parish School Board , 16-747 (La. App. 5 Cir. 4/12/17), 218 So.3d 708, 713. On remand, the School Board filed a Motion to Enter Final Judgment. At the hearing on the motion held on August 18, 2017, the trial court made clear that it intended for all ten appellants' cases to be completely resolved by the July 25, 2016 judgment, and that only the issues pertaining to the three remaining principals (Gloria Willis, Diane Nowik, and Lisa Kendrick) remained. The partial final judgment was signed on August 21, 2017.

Although the Amended Petition provides the name of this plaintiff as "Lisa Kendricks," the record reflects that the correct spelling of her last name is "Kendrick."

The contracts of Gloria Willis, Diane Nowik, and Lisa Kendrick were not renewed because their schools were closed and/or consolidated after the 2011-12 school year, thus eliminating their positions, unlike the other ten principals.

These eight appellants are Jackie Daniilidis, Simone Duhon, Julie Flattmann, Billie Gassen, Yvonne Gauthreaux, Dodie Plaisance, Cherie Varisco, and Patti Waddell.

These two appellants are Randi Hindman and Amelia Noel.

In most cases, these letters were sent to appellants after the end of the 2011-12 school year, which ended on June 30, 2012.

These six appellants were Gassen (hearing date 12/10/12), Gauthreaux (hearing date 4/15/13), Hindman (hearing date 2/25/13), Noel (hearing date 2/18/13), Plaisance (hearing date 4/15/13), and Varisco (hearing date 2/25/13).

These four appellants were Daniilidis, Duhon, Flattmann, and Waddell.

All of the appellants who received hearings before the School Board were represented by the same counsel.

It is important to note that none of the appellants challenged the factual data presented at their demotion hearings before the Board, including their schools' targeted growth scores as calculated by the State Department of Education, nor the fact that their schools had not met their targeted growth scores.

Nine of the ten appellants' latest employment contracts were entered into evidence (attached to a Stipulation of Facts). No employment contract was found for Cherie Varisco.

Factual information has been taken largely from the stipulated facts submitted by the parties to the district court.

As each of these appellants was serving as a principal in the 2011-12 school year, it is obvious that their original contracts had been renewed at least once. Furthermore, no principal contract was found for appellants Plaisance or Gauthreaux. Their contracts are for appointment as Assistant Principal, though in all other aspects except for salary information, these contracts are identical to principal contracts.

The items listed in the 2005 job description of principal have been referred to by the parties as "policies."

It was explained in the trial court that the 2011 revision was to give the Superintendent the discretion, upon "compelling evidence" (which was not defined in the policy) to extend a principal's contract whose school otherwise fell within the policy's criteria for mandatory reconstitution. It was explained in the record that such compelling evidence was that a school would be projected to be within 4 points of achieving its growth target.

Furthermore, we must reconcile the following seemingly contradictory statement made by the trial court in its June 13, 2016 judgment:
The use of State targeted growth scores in determining whether for removal purposes Plaintiffs were incompetent or inefficient did not violate Plaintiffs' contracts, and Plaintiffs' failure to achieve their respective growth scores could validly serve as the basis of an incompetency or inefficiency finding by the Board. However, the failure to achieve a specific growth score could not serve as cause for removal of Plaintiffs based upon an alleged failure to fulfill the terms and performance objectives of Plaintiffs' contracts because the contracts did not require attainment of a specific growth target, but only required Plaintiffs to facilitate a school's growth target or show progress in reaching that target.
This statement recognizes, correctly, that a principal may be removed for 1) incompetency, 2) inefficiency, or 3) failure to fulfill the terms and performance objectives of her contract. We find that it is not prohibited by statute or the contracts that the same facts could be used to support these alternative bases for removal. (See , for example, Irchirl v. Natchitoches Parish School Board , 12-488 (La. App. 3 Cir. 11/28/12), 103 So.3d 1237, wherein the Third Circuit found that the exact same alleged behavior could support alternative bases of charges against the teacher in a termination proceeding.) However, based upon our holding that appellants were contractually bound under Section IV of their contracts to all School Board policies regardless of whether said policies were established before or during their contractual terms, we disagree with the trial court's statement that the attainment of specific growth targets was not specifically required by the terms of their contracts. However, this disagreement is not determinative to our ruling, as we affirm the finding that failure to meet the SPS growth targets could be used by the Superintendent and the School Board to determine competency.

This Court takes note of La. R.S. 17:81(A)(1), which provides that "Each local public school board shall serve in a policymaking capacity that is in the best interests of all students enrolled in schools under the board's jurisdiction. When establishing board policies, each board shall prioritize student achievement, financial efficiency, and workforce development on a local, regional, and statewide basis."
Though this section was amended by La. Acts 2012, no. 1, and was effective July 1, 2012, it is clear that school boards had policy-making authority prior to that date, as evidenced by the various employment contracts found in this record dating back to 1998 (Daniilidis) which refer to School Board policies, the 2005 "policies" found in the principals' job description, and the 2010 policy and 2011 revision at issue in this case. The focus of the amendment of La. R.S. 17:81(A)(1) was apparently not to establish boards' policy-making authority, but to delegate the administrative authority (i.e. , employment decisions) previously held by local school boards to superintendents. See La. Fed'n of Teachers v. State , 14-0691 (La. 10/15/14), 171 So.3d 835, 849.

For the 2011-12 school year, the "unweighted" or preliminary SPS projection was based solely on student standardized test scores, which ultimately make up 90 per cent of the final SPS, and does not include the data comprising the remaining 10 per cent of the score, which is absenteeism and/or dropout rates where applicable. Corrected or final SPS scores are not available until well after the end of the school year; thus, decisions to demote are made using the latest year's unweighted SPS, which has been deemed a reliable indicator of the final SPS, given the weight of test scores.

It is important to note that the School Board did not appeal the judgment awarding each plaintiff varying amounts of pay. Thus, the only issue before this Court is whether the trial court erred in finding that the lack of notice did not result in reconducting the contracts for the entire two-year period.