# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

## CA 17-232


**PATRICIA POWELL**

**VERSUS**

**RAPIDES PARISH SCHOOL BOARD**



\*\*\*\*\*\*\*\*\*\*


APPEAL FROM THE
NINTH JUDICIAL DISTRICT COURT
PARISH OF RAPIDES, NO. 210,322
HONORABLE THOMAS MARTIN YEAGER, DISTRICT JUDGE

\*\*\*\*\*\*\*\*\*\*

**JOHN E. CONERY**
**JUDGE**

\*\*\*\*\*\*\*\*\*\*

Court composed of Elizabeth A. Pickett, John E. Conery, and Candyce G. Perret, Judges.


**AFFIRMED IN PART AND REMANDED IN PART.**

**Robert Lloyd Hammonds**
**Hammonds, Sills, Adkins & Guice, LLP**
**2431 South Acadian Thruway, Ste. 600**
**Baton Rouge, Louisiana  70808**
**(225) 923-3462**
**COUNSEL FOR DEFENDANT/APPELLANT:**
     **Rapides Parish School Board**

**Mildred Ellen Methvin**
**408 Silverstone Road**
**Lafayette, Louisiana  70508**
**337-501-1055**
**COUNSEL FOR PLAINTIFF/APPELLEE:**
     **Patricia Powell**

**Allison Anne Jones**
**Downer, Jones, Marino & White**
**401 Market Street, Suite 1250**
**Shreveport, Louisiana  71101**
**(318) 213-4444**
**COUNSEL FOR PLAINTIFF/APPELLEE:**
     **Patricia Powell**

**Jacques Maurice Roy**
**Attorney at Law**
**Post Ofice Box 1592**
**Alexandria, Louisiana  71309**
**(318) 487-9537**
**COUNSEL FOR PLAINTIFF/APPELLEE:**
     **Patricia Powell**

**CONERY, Judge.**

The Rapides Parish School Board (RPSB) appeals the October 19, 2016 judgment of the district court reversing the termination of a tenured teacher, Patricia Ellyn Powell (Ms. Powell), after a hearing before RPSB on September 19-20, 2001. For the following reasons, we affirm the portion of the district court's judgment reversing the termination of Ms. Powell but remand to the district court the portion of the judgment awarding damages to Ms. Powell to set the amount of damages with proper decretal language.

## FACTS AND PROCEDURAL HISTORY

It can be clearly discerned at the outset of this case that it has a long and involved history, as demonstrated by the district court's extensive, detailed written reasons for judgment, including "a timeline of events which began twenty-four years prior to the termination hearing." We will not duplicate this portion of the district court's reasons for judgment, but will summarize the pertinent parts which led to the district court's judgment on appeal before this court, as well as pertinent parts of the record on appeal.

Ms. Powell graduated with a B.A. in English Education and Social Studies from Louisiana College; earned a Master's Degree in Creative Writing from the University of Louisiana at Lafayette; and earned a Master's Degree in Ministry from Seattle University.

Ms. Powell began her teaching career in 1977, and continued teaching in two private Catholic schools in Rapides Parish until 1988. She began teaching in RPSB public schools in 1989. During her teaching career with RPSB, she consistently received excellent evaluations. On December 2, 1997, her

performance as a gifted teacher at Tioga Elementary School (Tioga) was rated as "100% satisfactory," by her principal. According to the trial judge's findings, the principal voiced "no criticisms, or mention of any dissatisfaction with Ms. Powell's teaching ability."

On January 6, 1998, Ms. Powell's photograph and comments appeared in the local newspaper, the Alexandria Daily Town Talk (Daily Town Talk), in connection with a settlement reached in a lawsuit between RPSB and its former superintendent of schools, Betty Cox (Ms. Cox). Ms. Cox had been hired by RPSB in March 1994 "but [was] suspended one year later after she began investigating abuses which publicly embarrassed certain board members." In response to her suspension, Ms. Cox filed an intervention in "the long-standing desegregation case" against RPSB and was able to secure an injunction blocking her suspension and later termination. Lengthy litigation ensued, and the case was finally settled for $1.7 million dollars on January 5, 1998.

Following news of the settlement, the Daily Town Talk published an article called "Residents Outraged." Ms. Powell was interviewed for the article and on January 6, 1998, her comments and photograph were printed in the paper:

> Patti Powell-Couvillion, a teacher at Tioga Elementary, wondered if parish residents will ever know the details of the agreement. "If the school board members have violated people's rights to the extent they have to pay more than $1.5 million, why can't the public know what was done?" Ms. Powell-Couvillion asked.

Shortly after Ms. Powell's photograph and comments appeared in the Daily Town Talk, she was evaluated once again by her principal at Tioga on January 15, 1998. This performance evaluation occurred nine days after the newspaper article and only forty-four days after her previous evaluation on December 2, 1997.

Despite receiving twenty-two satisfactory scores and a "100% satisfactory rating" in the December 2, 1997 evaluation, Ms. Powell received only two satisfactory scores in the January 15, 1998 evaluation. She received ten unsatisfactory scores and eight needs-improvement scores.

After the January 15, 1998 evaluation and less than a month after the newspaper article appeared, the following events took place: First, on January 26, 1998, RPSB closed Ms. Powell's gifted class at Tioga. Second, on January 28, 1998, the administrator of the Aiken Detention Center (Aiken) sent a letter to the then Director of Personnel requesting a certified teacher and referencing a previous conversation about his having to operate the facility with only substitute teachers. Finally, on January 30, 1998, Ms. Powell was notified by correspondence from the Director of Personnel that, "due to the closure of the gifted class at Tioga Elementary," effective February 3, 1998, she was being assigned to Aiken.

When she reported to the administrator of Aiken as instructed on February 3, 1998, she was told she "must have made someone downtown very angry." Her position at Aiken did not involve teaching at all, despite the administrator's "request" that a certified teacher be assigned. Ms. Powell's only duty was to monitor students who had been suspended or expelled from regular classes while they wrote papers. She was not allowed to review or grade the papers.

On May 25, 1998, Aiken's administrator conducted a performance evaluation of Ms. Powell and rated her performance satisfactory in twenty-eight out of twenty-nine areas. However, in a handwritten note, on the evaluation, the administrator reprimanded Ms. Powell because she "disregarded policy by leaving unannounced on one occasion." Ms. Powell testified that she did not leave unannounced. On the date in question, there was a bomb scare. Ms. Powell

followed instructions and evacuated her class to a nearby mall. She did not return to Aiken to sign out at the end of that day.

Ms. Powell was placed on a Level I Intensive Assistance Plan (IAP) on August 26, 1998. The IAP required her to "arrive at work by 7:20 a.m. and leave no sooner than 10 minutes after school is out in the afternoon."

On October 5, 1998, Ms. Powell arrived at Aiken at 8:30 a.m. She had already notified administration that she overslept and was running late. Her 8:30 arrival conflicted with the terms of the IAP. The Aiken administrator sent a formal letter to RPSB's Director of Personnel reporting the incident, which was then deemed a violation of the August 26, 1998 Level I IAP. Because of this violation, she was placed on a Level II IAP, "which threatened her with termination."

On November 5, 1998, Ms. Powell's termination was, in fact, recommended by the Level II IAP. Subsequently on March 30, 1999, she was suspended with pay "pending a full investigation." The Superintendent notified Ms. Powell by correspondence on June 27, 2000, that a tenure hearing was fixed for August 3, 2000, "to consider the charges outlined in an attached resolution of the RPSB."

RPSB's resolution entitled "SPECIFIC REASONS For Charges Against Ms. Patricia Powell," which was attached to the June 27, 2000 correspondence contained two charges. The first charge, "Section E. Specific reasons for Charge No. 1," stated that "[O]n numerous occasions during the 1997-1998 and 1998-1999 school years, Ms. Powell, a tenured teacher, reported to her work assignments in an untimely fashion." The charge claimed that she continued to report late for work, which constituted "willful neglect of duty on her part" despite being counseled and placed on two levels of professional assistance.

The second charge, "Section E. Specific reasons for Charge No. 2," stated that on April 24, 1998, Ms. Powell left the Aiken campus at "approximately 1:40 p.m. without notifying the administration or making arrangements for someone to provide supervision to her class." This required the school secretary to be sent to Ms. Powell's classroom, and later another teacher to consolidate Ms. Powell's class with her own. Leaving her class unattended constituted "willful neglect of duty." The "intentional falsification" of the sign in/sign out sheet constituted "dishonesty on her part." However, the record shows that when Ms. Powell left the Aiken campus she signed out at 2:30 p.m. and not 1:40 p.m.

The record reflects that between Ms. Powell's suspension in March of 1999 and before the first tenure hearing fixed for August 3, 2000, there were negotiations between the Superintendent, counsel for RPSB, and Ms. Powell's counsel that ultimately led to her reinstatement in August of 2000. The record demonstrates that these negotiations, detailed in correspondence dated August 1, 2000, involved an agreement that Ms. Powell would be given a teaching position in a high school in her area of certification, English. The cancellation of the August 3, 2000 tenure hearing was contingent on her physician providing documentation that her medication would not interfere with her ability to arrive on time at her new teaching position.

On August 9, 2000, Ms. Powell's treating physician, Dr. Steven J. Cavalier, sent the requested documentation to RPSB. The documentation stated that Ms. Powell was not taking any medication that would interfere with her arriving on time at a teaching position. It conditioned that opinion with the caveat that she suffered from multiple sclerosis, which was presently in remission. But because multiple sclerosis was an "unpredictable disorder," Dr. Cavalier opined that Ms.

6

Powell could suffer a "new attack or exacerbation [of multiple sclerosis] that would temporarily cause some impairment."

The August 1, 2000 correspondence also warned that if Ms. Powell was unable to "arrive at work in a timely fashion or to perform the essential functions of that position[, the Superintendent would] reinstitute her recommendation of termination." Further, there is a discussion that it might be possible to 'accommodate' Ms. Powell's "medical problems by assigning her to a high school; high schools in the parish begin at 8:30 a.m. rather than 7:30 a.m. startup time used in elementary schools."

Based on the forgoing, the Superintendent formally assigned Ms. Powell to Peabody Magnet High School, (Peabody) on August 15, 2000. The Superintendent asked Ms. Powell to report to the principal, Ms. Peggie Davis (Ms. Davis), for her actual assignment teaching tenth grade English. The Superintendent further instructed: "As expected of all teachers, you will be required to report at the time and place assigned by Ms. Davis."

From the beginning of her transfer to Peabody there appeared to have been a lack of communication between Ms. Powell and Ms. Davis. In September of 2000, an undated report stating that Ms. Powell had failed to attend several conferences regarding a student was placed in her personnel file. On October 3, 2000, a letter from a parent complaining that Ms. Powell had given her child an "F" in English was placed in her personnel file. Ms. Powell received a reprimand on an observation report relating to that child's failing grade on October 3, 2000.

On October 4, 2000, Ms. Powell's teacher observation form noted seven "Needs Improvement" scores. On October 11, 2000, she was purportedly placed on a Level II IAP requiring her to "design and implement effective lessons that are

7

meaningful[.]" Ms. Powell did not sign this document and did not recall ever reviewing the document. Subsequently, on October 30, 2000, she was purportedly placed on a second Level II IAP directing that she "follow guidelines for makeup work; is to provide accurate information on students during conferences, and treat all students with dignity and respect."

On November 14, 2000, a complaint was sent to the Assistant Superintendent about the child who had received the "F" in Ms. Powell's English class. On November 16, 2000, Ms. Davis erroneously reprimanded Ms. Powell for arriving late to work. The reprimand was made in error because of confusion with the time change that had occurred on October 29, 2000. Ms. Powell had arrived timely.

In December 2007, Ms. Powell was placed on a third Level II IAP, which directed her to "continue to design and implement effective lessons, communicate and have physical documentation that parents and caregivers are kept informed on students' progress." Like the October 11 IAP form, Ms. Powell did not sign or recall seeing this form either.

On December 11, 2000, Ms. Powell received a negative evaluation of the October 30, 2000 Level II IAP. The evaluation stated that she "continues to fabricate information on discipline behavior reports." No specifics were noted.

On January 11, 2001, Ms. Davis hand delivered a letter of reprimand to Ms. Powell. The letter identified a number of problems with both the students and other teachers. Ms. Powell was warned that if she did not comply, Ms. Davis would make a request to the Superintendent recommending her termination.

Ms. Davis eventually sent a letter to the Superintendent on April 4, 2001, recommending that Ms. Powell be terminated from her position as an English

teacher at Peabody. This letter resulted in Ms. Powell's suspension from her position at Peabody with pay in April of 2001. On August 22, 2001, the Superintendent sent a certified letter notifying Ms. Powell that the school board had unanimously voted to approve a resolution calling for a tenure hearing to be held on September 19, 2001, at 5:00 p.m. This certified letter sent to Ms. Powell advised that she was entitled to legal representation, could testify herself, and could call witnesses to testify on her behalf. A copy of the resolution detailing the charges to be heard at the tenure hearing was attached to the certified letter.

There were four charges made against Ms. Powell which can be summarized as follows: Charge 1—Tardiness; Charge 2—Failing to keep student records and progress reports; Charge 3—Improper language; and Charge 4—Use of a cell phone to call a student's parent during class. RPSB asserts that the charges brought against Ms. Powell occurred between her August 21, 2000 start date and her April 2001 suspension and had nothing to do with her prior suspension or threatened tenure hearing.

However, Charge 1, part E references Ms. Powell's "problems with tardiness in previous work locations." Further, Charge 1, part F asked, "Have any such charges previously been brought against the teacher?" The response references the charges brought against Ms. Powell while she was at Aiken, which resulted in her suspension and original threatened tenure hearing. The response stated, "Ms. Powell has been charged in a previous school year with excessive tardies, but the School Board never conducted a tenure hearing to consider that charge."

The inclusion of the reference in Charge 1 to the "tardiness" of Ms. Powell during the previous school year at Aiken demonstrates that despite RPSB's assertions, Charge 1 was clearly a continuation of the original events that led to the

9

recommendation for her termination in November of 1998 and subsequent suspension in March of 1999. Ultimately, Ms. Powell was terminated for violating Charge 1 through "willful neglect of duty." The facts as found by the district court clearly demonstrated the grounds for her 2001 termination were not limited to only the 2000-2001 year at Peabody.

The tenure hearing was held as scheduled on September 19-20, 2001. Although she consulted with counsel, Ms. Powell represented herself *pro se* at the hearing. In both her opening statement and in her testimony, Ms. Powell made it clear that she felt that she had been a victim of retaliation for the statement quoted in the Daily Town Talk criticizing the settlement between RPSB and the former superintendent. Ms. Powell claimed that the closure of her gifted class, transfer to Aiken, and the many unfavorable reviews since publication of the newspaper article were all part of RPSB's effort to make her resign.

During her testimony, Ms. Powell attempted to present her teacher evaluation forms for the past twenty-two years of her teaching career, which demonstrated that she had never received a negative evaluation except in the past two years, after the article was published. When asked by the president of RPSB why the documents were "[r]elevant to the proceedings," she replied, "Well, it shows, you know, that I did get good evaluations for twenty something years prior to being the most horrible teacher that ever lived."

The statements made by Ms. Powell at the tenure hearing clearly informed RPSB of her belief that she had been a victim of retaliation and that the charges and write-ups in her personnel file were an attempt to force her resignation. However, the hearing transcript does not contain any questions by the members of

RPSB or counsel for the superintendent seeking to inquire further into the allegations made by Ms. Powell.

The hearing began at 5:00 p.m. and continued into the small hours of the morning. RPSB went into a private session to debate the four charges and returned at approximately 1:00 a.m. to vote. RPSB found that Ms. Powell was guilty of willful neglect of duty on Charges 1, 2, and 4. Tie votes resulted in an acquittal on Charge 3. The district court ultimately determined that it could not "impose any disciplinary action" for Charge 4 because although RPSB found that Ms. Powell had violated her duty, they did not recommend disciplinary action on that charge. Therefore, Charges 3 and 4, not considered by the district court, are not before this court for review.

After the voting was concluded and a finding made that disciplinary action should be taken against Ms. Powell, RPSB voted to terminate her employment. RPSB sent certified correspondence to Ms. Powell on September 25, 2001, giving the details of RPSB's vote on each of the Charges and informing her of her termination effective September 20, 2001. Ms. Powell, through counsel, timely filed an appeal for review of the termination decision made by RPSB. The case languished for many years in the district court before finally proceeding to a review. Judgment was rendered in favor of Ms. Powell. RPSB now timely appeals that judgment.

**PROCEDURAL HISTORY IN THE DISTRICT COURT**

It is necessary to now discuss the procedural history of Ms. Powell's case once it reached the district court. Ms. Powell had been terminated by RPSB in September of 2011. The record demonstrates a long and tortured history in the Louisiana Ninth Judicial District Court, resulting in many delays and rulings in

11

four different divisions of that court. In fact, a number of motions were pending when the district judge whose judgment is being appealed took over the case at the end of 2013.

On October 4, 2002, the first district court judge assigned issued a scheduling order mandating the record of the 2001 tenure hearing be lodged. The district court ordered counsel for Ms. Powell to request the transcript of the hearing and advise the court within thirty days of receipt of that transcript if counsel intended to offer additional evidence. The district court further instructed that evidence would be closed if it did not receive timely notice from Ms. Powell's counsel. Counsel was then allowed thirty days to brief the issue after the transcript was filed. RPSB was ordered to respond within thirty days after Ms. Powell's brief was filed.

Shortly thereafter, the supreme court issued its opinion in *Spears v. Beauregard Parish Sch. Bd.*, 02-2870 (La. 6/27/03), 848 So.2d 540, making it clear that Ms. Powell, as the terminated teacher and the appellant, was required to pay the cost of preparing the transcript of her tenure hearing. The district court could not conduct its appellate review without the transcript. Further, Ms. Powell was required to pay the court costs associated with the appeal to the district court. The transcript was not filed within thirty days in compliance with the district court's order and the record does not contain a notice from Ms. Powell's counsel that she intended to offer additional evidence. However, the record also fails to show that counsel for RPSB immediately filed a motion and order asking the district court to conduct a hearing to determine whether the appeal should be dismissed and/or whether Ms. Powell should be precluded from offering additional evidence.

12

Meanwhile, on October 10, 2002, Ms. Powell propounded formal discovery to RPSB, which included interrogatories and requests for production of documents. On October 31, 2002, RPSB answered Ms. Powell's petition and submitted its first set of interrogatories and requests for production of documents to Ms. Powell.

The record contains no other activity in the case until December 20, 2007, when counsel for Ms. Powell requested a status conference with the district court. As a result of the status conference the case was fixed as a bench trial on April 24, 2008. However, contrary to the district court's original scheduling order of October 4, 2002, the transcript of the tenure hearing had not yet been lodged in the record. On March 25, 2008, counsel for Ms. Powell requested another status conference with the district court.

On April 7, 2008, RPSB filed a motion to compel the filing of the transcript of the tenure hearing in to the record, along with a motion for protective order, a motion in limine, and a motion for continuance of the April 24, 2008 bench trial. In essence RPSB sought to compel Ms. Powell to file a copy of the transcript of her tenure hearing within ten days or suffer dismissal of her appeal. No rulings on RPSB's motions appear in the record but the district court did reset the bench trial for August 28, 2008.

Ms. Powell responded with a motion to compel RPSB to answer discovery propounded on November 13, 2003, September 4, 2004, and April 19, 2006. A hearing was fixed for June 23, 2008, but once again no ruling on Ms. Powell's motion or RPSB's motions is in the record. The minute entry states the matter was continued without date by agreement. The August 28, 2008 trial was continued without date.

Three years later, on October 19, 2011, counsel for Ms. Powell filed a records request to RPSB. A supplementary request was filed on October 25, 2011. On November 23, 2011, nine years after Ms. Powell filed her appeal in the district court, the record of her 2001 tenure hearing was finally filed into the district court record along with her objections to the transcript.

On October 19, 2011, RPSB filed a motion to recuse the presiding judge, Judge Donald T. Johnson. After a series of motions pertaining to Judge Johnson's recusal, which eventually led to the case being assigned to Judge Thomas M. Yeager, additional counsel enrolled on behalf of Ms. Powell, and on November 15, 2013, requested a status conference with Judge Yeager. A status conference with all counsel was set by conference call for December 5, 2013. A pre-trial conference was held on February 25, 2014, and a bench trial was tentatively fixed for July 16, 2014. The July 16, 2014 trial was continued by joint motion of counsel, which sought an August 21, 2014 trial date. However, considering the outstanding, undecided motions, the district court did not immediately set a new trial date.

On May 19, 2014, the district court heard Ms. Powell's motions seeking a finding of spoliation of evidence in regard to lost documents, such as the time cards of other teachers, and a motion to exclude evidence unsubstantiated by admissible documentary or testimonial evidence. In its written reasons signed on July 8, 2014, the district court denied both motions. It found that the time cards of other teachers were "not relevant to the appeal process and would be inadmissible." Further, the district court stated:

> Incidents or allegations of a similar nature involving other employees are irrelevant and are not within the narrow scope of review by the Court since they do not address the question of whether there was

14

substantial evidence of record presented during the tenure hearing to support the decision of the School Board. *McKenzie v. Webster Parish Sch. Board*, 609 So.2d 1028 (La.App. 2 Cir. 1992).

The district court found that even if the time cards of other teachers were relevant it "would not impose the drastic consequence of an adverse inference against the defendant for the destruction of the time cards." The district court found no duty by RPSB to preserve the individual time cards of all other teachers at multiple schools under the theory of spoliation.

The district court also denied Ms. Powell's request to prohibit RPSB from presenting evidence on any Charges other than Charge 1, stating: "To allow evidence as to one count and not to the others would interfere with the Court's burden of evaluating the evidence presented to determine if the School Board's conclusions were arbitrary or constituted an abuse of [the] hearing body's discretion." Ms. Powell filed a motion for reconsideration of the district court's July 8, 2014 written reasons, which was denied by the district court on August 6, 2014.

In the interim, RPSB filed three motions in limine. After hearing the motions, the district court assigned written reasons which are summarized below. The first motion sought to prohibit Ms. Powell from calling "Superintendent Patsy Jenkins, nine former school board members, Robert Hammonds and James Downs (attorneys for the school board), David Shackleford, and Cher Marie Wilson, (Powell's daughter)."

The second motion by RPSB sought to exclude from evidence "a ring binder of almost 600 pages of fifty-four (54) exhibits" that were not offered by Ms. Powell during the tenure hearing. RPSB argued that any testimony and documents

15

not considered by the school board at the tenure hearing should not be considered by the district court. The district court initially agreed and cited La.R.S. 17:443(B), which provides for "*a full hearing*" before the district court but not a "trial *de novo*." The district court also cited *Howell v. Winn Parish Sch. Bd.*, 332 So.2d 822 (La.1976), and further stated:

> [I]t would be contrary to logic and reason to admit evidence that was not presented at the tenure hearing and then determine if the action of the board was "supported by substantial evidence, or conversely, an arbitrary decision and thus an abuse of discretion." To determine if the board was reasonable or unreasonable in its decision, the Court should review only the evidence presented to the board at the hearing and not new evidence presented on appeal.

The district court then granted both motions in limine filed by RPSB. The district court also granted RPSB's third motion to strike Ms. Powell's pretrial memorandum filed in July of 2014. The findings of the district court were memorialized in a judgment signed on April 13, 2015.

Ms. Powell filed a motion to reconsider the district court's ruling, which was heard on July 13, 2015. Counsel for RPSB did not file a response to Ms. Powell's motion and was not present at the hearing. The district court granted Ms. Powell's motion for reconsideration and reversed its April 13, 2015 judgment. However, it was later confirmed that counsel for RPSB had not received proper notice of either the motion or the hearing.

Accordingly, the district court re-fixed the hearing on Ms. Powell's motion for reconsideration for August 17, 2015, with notice to all counsel. Judge Yeager heard the arguments of counsel and took the matter under advisement. On October 20, 2015, he issued his written reasons for judgment and found:

> This identical motion has previously been decided by Judge Donald T. Johnson, Division "A", prior to his rotating from a civil to a

16

juvenile division of this court. In his oral reasons for judgment on October 20, 2011, he ruled the petitioner would be allowed to present new evidence and after his ruling, the defendant did not request reconsideration of that ruling.

Accordingly, the district court reversed its judgment of April 13, 2015, and granted Ms. Powell the "right to introduce exhibits not introduced at the tenure hearing including but not limited to the fifty-two (52) supplemental exhibits specifically referenced in Powell's pretrial memorandum (Powell Exhibit #40 and #50 were introduced at the termination hearing.)"

The district court also partially reversed its April 13, 2015 decision on witness testimony, and gave Ms. Powell the right to offer additional testimony and to call as witnesses herself, the nine former school board members, David Shackleford, Cher Marie Wilson, and Dr. Robert Eisenstadt. The district court prohibited calling as witnesses Robert Hammonds, attorney for the school board, and James Downs, attorney for the superintendent, until a hearing could be held pursuant to La.Code Evid. art. 508.

The district court further vacated its previous ruling and denied RPSB's motion to strike Ms. Powell's pretrial memorandum. The district court stated, "[H]er memorandum provides a factual analysis and legal arguments which are not in evidence. The Court will make a decision solely based upon the evidence introduced at trial and will not consider evidence not introduced that is discussed in a memorandum." RPSB sought reconsideration of the district court's October 20, 2015 ruling, which was denied without hearing on November 4, 2015. No supervisory writs were taken from this ruling.

Trial in this case began on November 10, 2015, following which additional testimony was heard on December 2, 2015, and the trial concluded on December 8,

17

2015. The district court issued its extensive written reasons for judgment on September 22, 2016, and issued its judgment on October 19, 2016. The district court found in favor of Ms. Powell and reversed RPSB's September 20, 2001 termination of Ms. Powell. RPSB filed a timely motion for reconsideration and/or new trial, which was denied by the district court on December 19, 2016. This timely appeal by RPSB followed.

## ASSIGNMENT OF ERRORS ON APPEAL

RPSB asserts the following assignment of errors on appeal:

1. The district court erred in applying the incorrect standard for judicial review of a school board's tenure hearing decision by, in effect, conducting a trial *de novo*.

2. The district court erred in concluding that the Board did not comply with the statutory formalities of the [teacher tenure law] TTL and/or procedural due process.

3. The district court erred in concluding that substantial evidence of willful neglect of duty by Powell that occurred during the 2000-2001 school year was "not relevant," in substituting its opinion for that of the Board, and in concluding that the Board did not prove by substantial evidence that Powell willfully neglected her duties during the 2000-2001 school year.

4. The district court erred in entering a judgment based, at least in part, on a First Amendment/free speech retaliation claim which was not part of the tenure charges, was not alleged in Powell's petition for review, was not considered by the Board during her tenure hearing, was not subject to the court's limited judicial review of said tenure hearing decision, and was prescribed.

5. Alternatively, the district court erred when it failed to apply the proper legal analysis to determine whether a retaliation claim existed, specifically by concluding that an adverse employment action has occurred when Powell was transferred in 1998 and that the cause of the transfer(s) was retaliation.

6. The district court erred in awarding Powell full back pay and retirement benefits through 2014, by exceeding the scope of relief authorized by the TTL and/or when the medical evidence indicated

18

that she was disabled and incapable of teaching as of March 2006, at the latest.

## LAW AND DISCUSSION

*Standard of Review*

Due to the extreme length of time between the filing of Ms. Powell's appeal in September of 2002, and the final judgment of the district court on October 19, 2016, we must apply the provisions of the TTL in effect in September of 2001, the time of Ms. Powell's teacher tenure hearing.[1]

In 2001, La.R.S. 17:443(A) (emphasis added) provided in pertinent part:

A permanent teacher shall not be removed from office except upon written and signed charges of willful neglect of duty, or incompetency or dishonesty, . . . and then only if found guilty after a hearing by the school board of the parish or city, as the case may be, which hearing may be private or public, at the option of the teacher. At least twenty days in advance of the date of the hearing, the **superintendent** with **the approval of the school board shall furnish the teacher with a copy of the written charges. Such statement of charges shall include a complete and detailed list of the specific reasons** for such charges and shall include but not be limited to the following: **date and place of alleged offense or offenses, names of individuals involved in or witnessing such offense** or offenses, names of witnesses called or to be called to testify against the teacher at said hearing, and whether or not any such charges previously have been brought against the teacher. The teacher shall have the right to appear before the board with witnesses in his behalf and with counsel of his selection, all of whom shall be heard by the board at said hearing. For the purpose of conducting hearings hereunder the board shall have the power to issue subpoenas to compel the attendance of all witnesses on behalf of the teacher. Nothing herein contained shall impair the right of appeal to a court of competent jurisdiction.

As then stated in 2001 La.R.S. 17:443(B) (emphasis added) provided in pertinent part:

B. If a permanent teacher is found guilty by a school board, after due and legal hearing as provided herein, on charges of willful

---

[1] The TTL, La.R.S. 17:443, was revised effective June 9, 2014. The revised law is not applicable to this case.

19

neglect of duty, . . . and ordered removed from office, or disciplined by the board, the superintendent with approval of the board shall furnish to the teacher a written statement of recommendation of removal or discipline, which shall include but not be limited to the exact reasons(s), offences(s), or instances(s) upon which the recommendation is based. Such teacher may, not more than one year from the date of said finding, petition a court of competent jurisdiction for **a full hearing to review the action of the school board,** and the court shall have jurisdiction to affirm or reverse the action of the school board in the matter. If the finding of the school board is reversed by the court and the teacher is ordered reinstated and restored to duty, the teacher shall be entitled to full pay for any loss of time or salary he or she may have sustained by reason of the action of the said school board.

The Louisiana Supreme Court in *Wise v. Bossier Parish Sch. Bd.*, 02-1525, pp. 5-7 (La. 6/27/03), 851 So.2d 1090, 1094-95 (emphasis added), reiterated the district court's authority in reviewing a school board's decision to terminate a teacher pursuant to La.R.S. 17:443 and stated:

> In *Howell v. Winn Parish School Bd.*, 332 So.2d 822 (La.1976), we held that judicial review of tenure proceedings must be limited to an inquiry of whether the School Board complied with the statutory formalities under Louisiana's Teacher Tenure Law and whether the School Board's findings were supported by substantial evidence. " 'Substantial evidence' has been defined as 'evidence of such quality and weight that reasonable and fair-minded men in exercise of impartial judgment might reach different conclusions.' " *Coleman v. Orleans Parish School Bd.,* 93-0916 (La.App. 4 Cir. 2/5/97), 688 So.2d 1312, 1315 (citing *Wiley v. Richland Parish Sch. Bd.*, 476 So.2d 439, 443 (La.App. 2 Cir.1985)). In conducting such an examination, the district court must give great deference to the school board's findings of fact and credibility. *Arriola v. Orleans Parish Sch. Bd.,* 01-1878 (La.2/26/02), 809 So.2d 932, 941. Reasons for dismissal are largely in the sound discretion of the school board. *Gaulden v. Lincoln Parish School Board*, 554 So.2d 152, 157 (La.App. 2 Cir.1989), *writ denied,* 559 So.2d 126 (La.1990). Thus, the school board's judgment should not be reversed in the absence of a clear showing of abuse of discretion. *Id.* Generally, an abuse of discretion results from a conclusion reached capriciously or in an arbitrary manner. See *Burst v. Bd. of Com'rs Port of New Orleans*, 93-2069 (La.10/7/94), 646 So.2d 955, *writ not considered*, 95-265 (La.3/24/95), 651 So.2d 284. The word "arbitrary" implies a disregard of evidence or of the proper weight thereof. A conclusion is "capricious" when there is no substantial evidence to support it or the conclusion is

20

contrary to substantiated competent evidence. *Coliseum Square Association v. City of New Orleans*, 544 So.2d 351, 360 (La.1989).

The district court may not substitute its judgment for that of the school board or interfere with the **school board's good faith exercise of discretion.** *Howard*, 793 So.2d at 153; *McLaughlin v. Jefferson Parish School Board*, 560 So.2d 585 (La.App. 5 Cir.1990); *Sampson v. Lincoln Parish School Board,* 439 So.2d 454 (La.App. 2 Cir.1983). The district court's responsibility in such a case is to determine whether the school board's action was supported by substantial evidence, or conversely, constituted an arbitrary decision and thus an abuse of discretion. *Howell*, 332 So.2d at 825; *Roberts v. Rapides Parish School Board*, 617 So.2d 187, 190 (La.App. 3 Cir.), *writ denied,* 619 So.2d 1068 (La.1993). As with the district court, a court of appeal may not reverse the decision of a district court unless it finds the school board's termination proceedings failed to comply with statutory formalities and/or the school board's findings were not supported by substantial evidence. *Wiley*, 476 So.2d at 442; *Cook v. Natchitoches Parish Sch. Bd.*, 342 So.2d 702 (La.App. 3 Cir.), *writ denied*, 345 So.2d 52 (La.1977); *Mims v. West Baton Rouge Parish Sch. Bd.*, 315 So.2d 349 (La.App. 1 Cir.1975).

### *Assignment of Error Number One- "De Novo" Review*

RPSB argues that the district court erred in conducting a *de novo* review of the case in direct contradiction to "[t]he district court's responsibility in such a case is to determine whether the school board's action was supported by substantial evidence, or conversely, constituted an arbitrary decision and thus an abuse of discretion." *Wise*, 851 So.2d at 1095.

In its written reasons for judgment, the district court clearly stated that the standard of review by a district court of a teacher tenure hearing is "not a trial *de novo*." However, La.R.S. 17:443(B) (emphasis added) allows the teacher the right to "petition a court of competent jurisdiction **for a full hearing to review** the action of the school board." In *Butler v. Iberville Parish Sch. Bd.*, 93-2291, p. 3 (La.App. 1 Cir. 12/22/94), 648 So.2d 459, 460, our sister circuit stated: "while [La.R.S. 17:443(B)] by its terms provides for review by the courts and not a trial

de novo, the requirement of a full hearing indicates that the legislature intended the courts to exercise a broad scope of judicial review, particularly at the district court level." Further in *Lewing v. DeSoto Parish Sch. Bd.*, 113 So.2d 462, 465 (La.1959), the supreme court stated:

> Our study of the Teachers' Tenure Act and the jurisprudence convinces us that the provision in LSA-R.S. 17:443, supra, providing 'for a full hearing to review the action of the school board' is for the benefit of discharged teachers. If a school board decides that sufficient evidence was adduced before it to sustain the dismissal of a teacher, she is entitled, if she desires, to a full hearing on the merits in the district court with a presentment of additional evidence in her behalf. Article 476, Code of Practice. The defendant school board would then be given an opportunity to negate this evidence. Article 477, Code of Practice.

Therefore, despite RPSB's claim that the district court erred in allowing additional evidence by Ms. Powell at her trial in the district court, this practice has not been viewed by our courts as a "*de novo*" review. "[T]he teacher may offer evidence which does not duplicate that presented at the school board hearing." *Ford v. Caldwell Parish Sch. Bd.*, 541 So.2d 955, 958 (La.App. 2 Cir. 1989) (citing *Lewis v. East Feliciana Parish Sch. Bd.*, 372 So.2d 649 (La.App. 1 Cir.), *writ denied*, 375 So.2d 959 (La.1979); and 452 So.2d 1275 (La.App. 1 Cir.), *writ denied*, 458 So.2d 123 (La.1984)). *See also Wise*, 851 So.2d 1090.

RPSB acknowledged in its briefing that when a teacher was subject to termination, "the TTL leaves open the door for a terminated teacher to present new evidence in limited circumstances." The court in *Lewing*, 113 So.2d 465, held that unless a teacher chooses to introduce additional evidence, the school board is confined to the record on which it acted. This is because the board "should not be allowed to prove its cases in the district court." *Howell*, 332 So.2d at 824 n.4. However, if the terminated teacher, in this case Ms. Powell, chose to present new

evidence in the district court, RPSB would be given the opportunity to "negate this evidence." *Lewing,* 113 So.2d at 465.

In oral argument to the district court at the reconsideration hearing on the introduction of new evidence, RPSB argued that the court was strictly to sit in an appellate capacity with no new evidence allowed. RPSB compared the district court's decision to allow Ms. Powell to present additional evidence and witnesses not admitted or called at the tenure hearing to allowing the losing party at the district court level to put additional evidence into the record at the appellate level that was not presented to the district court. Based on the jurisprudence and the record before us, we do not agree.

The previous trial judge had specifically ruled that additional evidence by Ms. Powell would be allowed. RPSB's counsel did not ask for reconsideration of that ruling. Although Judge Yeager initially ruled that no new evidence, new exhibits, or new witnesses from Ms. Powell would be allowed in evidence, on reconsideration Judge Yeager reversed that decision. We further note that this issue was subject to extensive briefing and two hearings before the district court. Especially in light of Judge Yeager's specific findings that RPSB was in bad faith and had not followed procedural and substantive due process in this case, we find that the trial judge's ruling to allow and consider additional evidence not introduced at the tenure hearing was within his discretion. Though the district court may not ordinarily substitute its judgment for that of the school board, that principle assumes the school board acted in good faith and followed the procedural and substantive due process rights of the teacher. The district court found otherwise, and we agree. Accordingly, we find that RPSB's assignment of error number one is without merit.

*Assignment of Error Number Two- Statutory Formalities*

RPSB claims in its assignment of error number two that the district court erred in concluding that RPSB did not comply with the "statutory formalities" of La.R.S. 17:443(A) (emphasis added), which reads in relevant part:

> Such statement of charges **shall include a complete and detailed list of the specific reasons for such charges and shall include but not be limited to the following: date and place of alleged offense or offenses, names of individuals involved in or witnessing such offense or offenses,** names of witnesses called or to be called to testify against the teacher at said hearing, and whether or not any such charges previously have been brought against the teacher.

This court in *Rubin v. Lafayette Parish Sch. Bd.*, 93-473, pp.11-12 (La.App. 3 Cir. 12/14/94), 649 So.2d 1003, 1012, *writ denied*, 95-845 (La. 5/12/95), 654 So.2d 351 discussed a teacher's rights under the provisions of La.R.S. 17:443(A) and stated:

> The teacher's right to a *complete* and *detailed* list of the specific reasons for each charge against her and the Board's obligation to vote on *specific* charges are fundamental requisites of the Tenure Act. *State ex rel. Franceski v. Plaquemines Parish School Board*, 416 So.2d 150 (La.App. 4th Cir.1982), *writ denied*, 421 So.2d 907 (La.1982) (*Other citations omitted*.) Findings of guilt which do not correspond with specific charges are insufficient to legally support a decision to terminate the teacher's employment. Meaningful judicial review requires that courts know exactly which allegations or combination thereof were judged by the board as substantial evidence supporting the termination.

In this case, the "***SPECIFIC REASONS FOR CHARGES AGAINST MS. PATRICIA POWELL***," dated August 22, 2001, under the heading "Charge No. 1: Willful Neglect of Duty," Section "E. Specific reasons for Charge No. 1," provided:

> As required by the handbook for teachers at Peabody Magnet High School, and, as directed by the Principal of Peabody Magnet High School, teachers are required to report to work and to clock in by 8:25 a.m. During the 2000-2001 school year, Ms. Powell reported and/or

24

clocked in after 8:25 a.m. on numerous occasions. Ms. Powell has had problems with tardiness in previous work locations and had been formally reprimanded for her late arrival at work at Peabody Magnet High School by letter from her principal dated November 16, 2000. Despite these facts, Ms. Powell was still unable to consistently arrive at school in a timely fashion. Such actions on her part constituted willful neglect of duty.

At the hearing before RPSB, Ms. Davis testified to approximately fifty-four specific dates and times where Ms. Powell failed to clock in as per Ms. Davis's directive that Ms. Powell arrive at Peabody at 8:25 a.m. However, this specific information, which presumably was gleaned from time cards, was not provided to Ms. Powell as required by La.R.S. 17:443(A), which, by using the mandatory term "shall", requires that the notice of the specific charges be sent to a teacher twenty days prior to the tenure hearing. The TTL (emphasis added) also requires that the notice "shall include **a complete and detailed list of the specific reasons for such charges** and shall include but not be limited to the following: **date and place of alleged offense or offenses**, names of individuals involved in or witnessing such offense or offenses[.]"

In *Rubin*, 649 So.2d at 1013-14 (citations omitted), a panel of this court found that the required formalities of the notice to Ms. Rubin were not met when the Lafayette Parish School Board failed to specifically provide her with the specific dates and times of the alleged offenses and stated, "[o]ur jurisprudence has long established that the Teacher Tenure Act should be liberally construed in favor of the teacher it is designed to protect. Thus, school boards must *strictly comply* with the removal provisions of the Act to legally discharge a tenured teacher."

In this case, the district court found that Charge No. 1 failed to comply with due process requirements for the following reasons:

25

1) There was a failure to state the date(s) and time(s) Ms. Powell "clocked in" after 8:25 a.m. Obviously because the school had a time clock, the Rapides Parish School Board should have been aware of the exact dates and times she was late and stated such.

2) Although an allegation states she had "problems with tardiness in previous work locations," it does not provide specificity as to the date(s), time(s) or place(s)" she had problems with tardiness[.]

We find that the district court acted within its discretion in finding that with respect to Charge No. 1, RPSB did not give Ms. Powell the required due process notice of the specific dates and times of her alleged tardiness twenty days prior to the tenure hearing before RPSB, although the information was clearly in the custody of RPSB. Further, we do not agree with RPSB's assertions that it was Ms. Powell's responsibility to seek clarification of the charges made prior to the hearing.

### a. Willful Neglect of Duty and/or Incompetency-Procedural Due Process

Based on the same analysis, the district court also found that RPSB failed to comply with the due process requirements of La.R.S. 17:443(A) in Charge No. 2. That charge also did not state specific reasons and details as is required by the TTL in light of our decision in *Rubin*, 649 So.2d 1003.

RPSB's August 22, 2001 letter giving notice to Ms. Powell of the tenure hearing, "Charge No. 2: Willful Neglect of Duty and/or Incompetency." Part E., "Specific reasons for Charge No. 2:" stated:

> On several occasions during the 2000-2001 school year, Ms. Powell was directed by her principal at Peabody Magnet High School to keep records reflecting the progress of her students (such as graded tests and papers). She was also asked by her principal to communicate student progress on a regular basis to parents/caregivers. The need for physical documentation of student's progress was discussed with Ms. Powell on October 11, 2000 during an Intensive Assistance Plan meeting. On December 7, 2000, an Intensive Assistance Plan was written outlining the need for physical documentation of each

26

student's progress. On February 2, 2001, the Principal of Peabody Magnet High School had a conference with Ms. Powell concerning the awarding of grades to a particular student for the fourth grading period. Ms. Powell had no physical documentation that would justify the grades that she gave for that grading period despite the repeated directives of her Principal and her Intensive Assistance Plans. The failure on the part of Ms. Powell to keep documentation supporting the grades that she gave the students and her failure to communicate regularly to the parents/caregivers for such students about their performance constituted willful neglect of duty on her part.

Ms. Davis was the only witness to testify at the tenure hearing on the specific issues surrounding the failure of Ms. Powell to follow her directives as stated in Charge No. 2. Ms. Powell denied the accusations and explained her reasoning in some detail.

The trial judge heard and evaluated the testimony of both Ms. Davis and Ms. Powell and judged their credibility. The trial judge concluded:

1)  There is a failure to state the date(s) and time(s) Ms. Powell was "directed to keep records reflecting the progress of her students" and "when she was asked by her principal to communicate student progress on a regular basis."

2)  There is a failure to state the name of the "particular student" the principal and Ms. Powell discussed on February 2, 2011 (sic).

Counsel for RPSB cites *Irchirl v. Natchitoches Parish Sch. Bd.*, 12-488 (La.App. 3 Cir. 11/28/12), 103 So.3d 1237, for the proposition that the TTL does not require the exact dates, times, and names of witnesses be included in the statutory notice. Irchirl was a guidance counselor represented by counsel throughout the proceedings, and counsel had been provided with a copy of the letter with attachments specifically outlining, in detail, each charge, identified as Supt. 1-B.

In reviewing the actions of the school board in that case, a panel of our court quoted the trial judge and specifically noted, "[T]he trial court found that 'Irchirl

27

had the extended opportunity far beyond the 20 days provided by the statue to prepare a defense against the allegations set forth in Supt. 1-B, which the court finds to be in compliance with the statute.'" *Irchirl,* 103 So.3d at 1243.

In *Irchirl*, 103 So.3d at 1242, our court further noted:

> " '[D]ue process is not a technical concept with a fixed content unrelated to the time, place and circumstances.' Rather, it requires the implementation of flexible rules which may yield to the demands of the particular situation." *Rubin v. Lafayette Parish Sch. Bd.*, 93- 473, p. 9 (La.App. 3 Cir. 12/14/94), 649 So.2d 1003, 1010-11 (quoting *Wilson v. City of New Orleans*, 479 So.2d 891 (La.1985)), *writ denied*, 95-845 (La.5/12/95), 654 So.2d 351. *See also*, *Johns v. Jefferson Davis Parish School Bd.*, 154 So.2d 581 (La.App. 3 Cir.1963) (Statutory provision for formal notice and hearing on charges against teacher contemplates reasonable and substantial compliance with general principle of due process of law which requires that teacher be given formal notice of charges against him made with sufficient specificity that he may prepare any defense he may have.)

Ms. Powell was unrepresented and there was no exhibit outlining the specifics of the charges provided to her twenty days before the teacher tenure hearing as in *Irchirl*. The district court made specific findings that RPSB was in bad faith and the notice had violated Ms. Powell's due process rights.

We find that, as to Charge No. 2, the district court acted within its discretion in finding that Ms. Powell was not given the required due process notice mandated by La.R.S. 17:443(A). We find that assignment of error number two is without merit.

*Assignment of Error Number Three – Substantial Evidence*

RPSB argues in assignment of error number three that the district court 'erred in concluding that substantial evidence of willful neglect of duty by Powell that occurred during the 2000-2001 school year was "not relevant."' In its written reasons, the district court had found that, in effect, the entire tenure hearing was

28

flawed, as Ms. Powell had not been afforded due process and had not received the opportunity to be heard "at a meaningful time and in a meaningful manner." *Fuentes v. Cortese*, 407 U.S. 67, 80, 92 S.Ct. 1983, 1994 (1972).

The record reflects that it is undisputed that Ms. Powell's tenure hearing began at 5:00 p.m. and continued until 1:30 a.m. The Superintendent completed her case at approximately 11:00 p.m., after six hours of extensive testimony had been heard by RPSB. At the time Ms. Powell began her *pro se* defense, the trial judge noted that it was apparent from the transcript of the tenure hearing that all parties involved were exhausted and in some cases confused. Yet RPSB continued the hearing "rather than recess and return another day, *as suggested by Ms. Powell.*" The district court concluded that it was fundamentally unfair for the hearing to continue under those circumstances. RPSB members' votes on the four charges against Ms. Powell involved multiple questions, which should not have been considered at approximately 1:00 a.m. These actions of RPSB resulted in a violation of Ms. Powell's due process right to a full and fair hearing.

After much deliberation, the district court issued extensive written reasons for judgment. Because the district court found that Ms. Powell had not received procedural due process, it eventually concluded that the tenure hearing conducted by RPSB was "not relevant." The district court found that RPSB had not acted in good faith. The district court based its conclusion on facts in the record that demonstrated that Ms. Powell was the victim of "political retaliation." The district court went into great detail to discuss its reasons for finding that RPSB failed to present "substantial evidence" to support both Charge No. 1 and Charge No. 2 against Ms. Powell. The district court issued specific reasons finding that the

29

testimony of Ms. Davis was not credible, and accepted the testimony of Ms. Powell as credible.

RPSB argues on the issue of whether substantial evidence was presented by RPSB to support Ms. Powell's termination, that the district court's statement in its written reasons, "[A]s to this issue, substantial evidence was presented by both parties as to whether Powell should have been terminated because of a willful neglect of duty." RPSB claims that should have ended the district court's determination and RPSB's termination of Ms. Powell should be affirmed.

It is clear from its well documented reasons for ruling that the district court found that the specific facts in this case preempted "all the willful neglect of duty evidence." The district court stated in its written reasons, "[I]t's the elephant in the case, and it concerns political retaliation of a kind that is not found in any other TTL jurisprudence." In support of its factual finding of bad faith "political retaliation" the district court then found that the following undisputed facts supported its conclusion:

> 1) Powell was a teacher for 24 years without a blemish on her record, including with the RPSB;
>
> 2) December 2, 1997: she received a perfect performance review by her principal, Shirley Richie, which was consistent with her past years of service;
>
> 3) January 6, 1998: she is quoted in the local newspaper criticizing the RPSB;
>
> 4) January 15, 1998: forty-four calendar days after her previous evaluation and nine days after the article appeared, her evaluation by the same principal with the same class resulted in ten unsatisfactory, eight needs improvement and two satisfactory scores;
>
> 5) January 26, 1998: twenty days after the article, the RPSB closed her gifted class at Tioga Elementary School;

6) January 28, 1998: twenty-two days after the article, the administration of Aiken Detention Center sent a letter to Patsy Jenkins for a certified teacher after they had a "conversation";

7) January 30, 1998: by letter from Patsy Jenkins, Powell was transferred to Aiken Detention Center as of February 3, 1999. Although Clayton Williams wrote that he needed a "certified teacher" at Aiken, Ms. Powell was not assigned a teaching position at Aiken. Query: If Powell was not assigned a teaching position, why did Williams need a certified teacher?

ALL OF THIS HAPPENED IN ONE MONTH AFTER THE NEWSPAPER ARTICLE-JANUARY 6 TO FEBRUARY 3, 1998!

After finding that Ms. Powell had not received procedural due process at the tenure hearing conducted by RPSB, the trial judge based its determination on his findings that Ms. Powell was the victim of "political retaliation." Aside from the fact the district court found RPSB was retaliating against Ms. Powell, the district court also concluded RPSB failed to present sufficient evidence of the charges. He then went into specific detail to discuss its reasons for finding that RPSB failed to present substantial evidence to support both charge one and charge two against Ms. Powell,[2] as we will now discuss.

### a. Charge No. 1 – Tardiness

In its written reasons for judgment the district court found that the testimony presented at the tenure hearing with respect to the reporting time for teachers in RPSB school system was "confusing and inconsistent." The Superintendent failed to introduce a copy of the handbook for teachers at Peabody and only submitted a letter to the teachers which stated that teachers were "to report by 8:25 a.m. [y]ou may leave at 3:25 p.m." The district court's findings on charge number one are

---

[2] On Charge Number Three, RPSB found that Ms. Powell was not guilty of willful neglect of duty. On Charge Number Four, RPSB found that Ms. Powell was guilty of willful neglect of duty but found in a tie vote that no disciplinary action be taken against Ms. Powell. Therefore the trial court refused to consider Charge Number Four as a basis for her termination.

quite thorough:

Ms. Powell has been adamant that the report time was 8:35 a.m. The difference is substantial. If the reporting time was 8:25, Ms. Powell was late fifty-one times and if it was 8:35, she was a few minutes late which totaled 61 minutes in a five month period. However, if report time was 8:35 and class instruction began at 8:45 a.m., she never missed the start of her class at 8:45 a.m. The latest she clocked in was 8:41, six minutes late if clock-in time was 8:35 a.m.

Although the Court is not aware of the report time from the Peabody handbook, the job description for secondary teachers required teachers to report to school ten minutes before school began and to be in the assigned classroom when the class period begins.

As stated above, the evidence presented at the tenure hearing is insufficient to prove Ms. Powell was tardy. The Court is baffled at why such an easy issue as report time for teachers is so difficult to find from the record.

Principal Davis testified at the tenure hearing that Ms. Powell's frequent tardiness caused problems for the school and that Ms. Davis "had to get a sub or someone to go in and keep her class" when Ms. Powell "came in at 8:40 and nine o'clock." This testimony is contradicted by the time cards which show that Ms. Powell never clocked in at 9:00 and in fact never clocked in later than 8:41.

She also testified that there were three bells: the first at 8:35, the "beginning of school", a second at 8:40, and the final "tardy" bell at 8:45 when "class instruction" began. She later contradicted herself and said that because the first bell rang at 8:35 a.m., the teachers were expected to be on campus at 8:25 a.m.

However, in her November 16, 2000, Letter of Reprimand, she stated "you are aware that our school day begins at 8:40 a.m. and that you are expected to report to work before 8:25," which conflicts with her testimony that school began at 8:35 and conflicts with the job description for secondary teachers to report ten minutes before school begins which would be 8:35.

Lyle Hutchinson, the Assistant Superintendent for Curriculum and Instruction, testified at the tenure hearing that teachers were to arrive "ten minutes before class begins," (which would be 8:35). He later contradicted this testimony stating that teachers had to report "ten minutes before the first bell" at 8:35, which would have been 8:25. He was unable to explain where Ms. Davis got the idea that school began at 8:40 and not 8:35.

Dr. Patsy Jenkins, the Rapides Parish School Superintendent at the time of the tenure hearing, testified at trial that the rule to report "ten minutes before school begins" could not be overruled by a principal. Therefore, teachers cannot be ordered to appear at school fifteen or twenty minutes before the "class instruction time" in that it would violate the Rapides Parish School Board policy.

For the foregoing reasons, the Court does not find substantial evidence in the record to support the finding on charge 1 that Ms. Powell was guilty of "willful neglect of duty for failing to [report to] work timely." Based on the contradictory and confusing evidence, the Court is unable to determine the time Powell was required to be present at school.

The district court concluded as to Charge No. 1: "the finding by the Board on this charge was reached in an arbitrary and [capricious] manner in that there was a disregard of the evidence before it and not supported by substantial competent evidence." Based on the district court's findings, we agree.

### b. Charge No. 2-Failing to Keep Student Records and Progress Reports

The evidence supporting Charge No. 2 at the teacher tenure hearing was given primarily by Ms. Davis. Although some parents and students were called to testify, the charges are directed to Ms. Powell's failure to comply with Ms. Davis's directives. Ms. Davis had custody of all of Ms. Powell's student folders but they were not introduced into evidence at the tenure hearing to support the charges made against Ms. Powell. The district court further found Ms. Davis's testimony was not credible.

The district court gave extensive written reasons citing evidence heard by RPSB at the teacher tenure hearing which refuted each of the allegations made against Ms. Powell in charge two. The district court's findings on Charge No. 2 state in pertinent part:

7) Powell testified that "prior to the Detention Center, I had the gifted class at Tioga Elementary. As far as the second charge, I

33

definitely kept physical documentation on everything, every paper that [a] child ever did, every test they ever took I kept. I have two – every child has two folders. I didn't get any at the beginning of the year, I did not see a folder. I went one day to ask Mr. Bayonne if I could get a box of folders and he didn't even respond to me. So I went to Ms. Cox and asked her if she-if I was just to go buy those on my own and she said well, no, I have some that I got with grant money and so she gave me a box. And I had asked all the kids – I had sent letters home at the beginning of the year asking every student with a – it was like a syllabus and I had a list of supplies and two manila folders, black pens, glue stick, three ring binds [sic][binders], everything I needed was on there, and the kids wouldn't bring them in regularly. You know, I didn't collect enough, and so I did go ahead and try to finally and try to make my own with the help of Ms. Cox and they were used. There were two folders for every child. One was a writing portfolio because I used process writing groups in my class and you have to keep – to trace their progress, you have to keep a portfolio of their work, and it shows how they get better and better as the year progresses. The other folder was all their test papers, every, every test they had ever taken, every grade they ever made. And generally my students would have lots of opportunities for extra credit. I offered extra help two days a week. They could either come before school or after school. So I had two days a week where I offered extra help or they could like make an appointment and I was glad to help them with anything extra."

8) It appears from the evidence that the documentation issue in this charge specifically involved KD, a student in Powell's English I class. The evidence shows beyond any doubt that KD, like most of her fellow students, had serious problems with rules and authority figures. During class time instruction, she would talk, shout, and distract the other students and was insubordinate to Ms. Powell. She would also step out in to the hall during class and leave the class early without permission. On several occasions, KD would leave class early without turning in her test paper which resulted in Powell giving her a zero (0) grade for that test. According to Powell's grade book, this occurred on three occasions which caused her to receive an F average. Unfortunately, instead of her mother disciplining her child, she complained to Ms. Davis, who then complained by letter to Thomas Roque, Assistant Superintendent at RPSB. In the letter, Davis informed Roque that after MD (KD's mother) had met with Mr. Bazone, Mrs. Henagan, Ms. Hammond and Ms. Powell, she "mandated" Powell to "change a grade of 70 that should have been a 93." Her reasons were: There were three zeros recorded that Ms. Powell could not justify because "papers could not be produced to verify the grades of zero (0)." In translation, this means KD was given a test, left the room early and did not turn in her test paper. *Her failure to take the test and turn it in means she doesn't get any credit for a test she doesn't take…*thus, she received the zeros.

The Court finds the evidence shows that KD would leave class early without permission and would fail to turn in her test because there was a "bus leaving early from school." In her letter, Ms. Davis stated this was "proven to be a misrepresentation of true facts because we do not have any buses leaving before 3:20 p.m." This was "not a misrepresentation of true facts" by Ms. Powell, but was a misrepresentation of "true facts" by KD. KD knew there was not an early bus but used this as an excuse to leave the classroom without permission so she didn't have to turn in her test. Obviously, Ms. Davis chose to believe a 15 year old child with a behavioral problem than a teacher with 24 years' experience.

Powell also caught KD cheating on two occasions giving her a zero for one assignment and reducing a 95 to a 70 on one paper because she "at least turned in an assignment." A review of KD's grade[s] form (sic) Powell's grade book shows KD received grades of 0, 0,73,57,43 and 61, a total of 236 points, for an average grade of 39. Ms. Powell's grade book shows an average of 39.8, exactly as it should be, which is an F average anywhere in North America.

The district court "was impressed with Powell's record keeping," made credibility decisions after considering all the evidence, and found factually that "there was no substantial evidence to support the charge." The district court found "a clear abuse of discretion" on the part of RPSB. We agree that the district court's detailed findings and reasoning were within its discretion and find assignment of error number three is without merit.

### Assignment of Error Number Four-First Amendment/Free Speech Claims

RPSB argues in assignment of error four that the district court erred:

[I]n entering a judgment based, at least in part, on a First Amendment/free speech retaliation claim which was not part of the tenure charges, was not alleged in Powell's petition for review, was not considered by the Board during her tenure hearing, was not subject to the court's limited judicial review of said tenure hearing decision and was prescribed.

RPSB took great pains to argue to both the district court and this court that the charges brought against Ms. Powell at her teacher tenure hearing were only related to her performance at Peabody in 2000-2001. However, as previously

found by the district court and this court, there is sufficient evidence in the record to support a finding that Ms. Powell's problems with RPSB stemmed from the article criticizing RPSB in connection with the settlement of the case with the former Superintendent. Therefore, RPSB's first contention in this assignment of error is without merit.

RPSB further contends that Ms. Powell's retaliation claim was not specifically addressed in Ms. Powell's petition for review timely filed in the district court on September 20, 2002. In her petition for review in the district court, Ms. Powell seeks *de novo* review and assigns "as fault the following non-exclusive particulars or errors in this request for a *de novo* review or plenary hearing before this court to adduce additional evidence and consider the record made below[:]"

> *a) Failing to properly provide notice and grant administrative rights prior to the full board hearing in violation of custom, practice, and law;*
>
> *b) Failing to treat your Petitioner in a similar fashion vis-à-vis other tenured teachers of a similar position and relatedly using discriminatory tactics to "run off" your Petitioner in violation of substantive and procedural due process rights;*
>
> *c) Failing to provide teaching tools required to fulfill teaching duties in an arbitrary and capricious fashion, and failing to accommodate legitimate medical conditions of your Petitioner or properly consider such conditions at the tenure hearing;*
>
> *d) Improperly considering stale charges or cumulating charges violating due process and fundamental fairness[.]*

In essence, RPSB is claiming that Ms. Powell failed to state a cause of action for retaliation in her petition for review. However the cited portions of her petition do reflect her allegation that she had been unfairly treated and that RPSB had tried to "run her off." Considering the specific findings of the district court that shortly after her criticism of RPSB she was transferred from her gifted class at

Tioga to Aiken, we find that the allegations of the petition in this case must be construed liberally in favor of Ms. Powell. *Rubin*, 649 So.2d at 1003. As noted, in her opening statement at the teacher tenure hearing, Ms. Powell specifically claimed "political retaliation," and RPSB's bad faith efforts to try and get her to resign.

The TTL was enacted in 1922 and amended in 1936 with the central purpose to offer "the protection of teachers against political vengeance and reprisals," and to afford protections "for the benefit of the teacher, not the school boards." *Rousselle v. Plaquemines Parish Sch. Bd.*, 93-1916 (La. 2/28/94) 633 So.2d 1235, 1241-42. Accordingly, our jurisprudence is well-established that the provisions of the TTL are to be liberally construed in favor of teachers. *Id.* We find no merit to RPSB's claim that Ms. Powell's complaints of "political retaliation" were beyond the scope of the district court's authority to review.

RPSB also claims that the issue of retaliation was not addressed at the teacher tenure hearing. Again, as previously found by the district court, and as we discussed infra, Ms. Powell raised the issue of retaliation both in her opening statement and during her testimony at the teacher tenure hearing. Also, as previously stated, none of the members of RPSB or counsel for the Superintendent questioned Ms. Powell about her allegations of retaliation at the tenure hearing, though they clearly had the opportunity to do so.

Finally, RPSB claims that any claim of retaliation is beyond the scope of judicial review granted to the district court. Based on the foregoing determinations and findings of fact made by the district court, we cannot agree. The district court made specific findings of fact that RPSB failed to both comply with the statutory formalities of the TTL and to present substantial evidence to support its charges.

More importantly, the district court found, and we agree, that RPSB's decisions were motivated by "political retaliation" and were not in good faith. Therefore, we affirm the portion of the district court's judgment reversing the termination of Ms. Powell by RPSB effective September 20, 2001.

### *Assignment of Error Number Six- Back Pay and Retirement Benefits*[3]

RPSB urges that the district court erred in awarding Ms. Powell full back pay and retirement benefits through 2014 by exceeding the scope of relief authorized by the TTL. Further, RPSB argues that the medical evidence indicated Ms. Powell was disabled and receiving Social Security Benefits as of March of 2006.

Louisiana Revised Statutes 17:443(B) provides in pertinent part:

> If the finding of the school board is reversed by the court and the teacher is ordered reinstated and restored to duty, the teacher shall be entitled to full pay for any loss of time or salary he or she may have sustained by reason of the action of the said school board.

As this case has gone on for approximately fifteen years, it is impossible for Ms. Powell to return to her position as a teacher with RPSB.

Therefore, the judgment of the district court awarded damages to Ms. Powell for wages from September 20, 2001, the effective date of her termination, through August 18, 2014, the date of her sixty-second birthday. However, the judgment does not state the specific amount being awarded to Ms. Powell. It additionally awarded future teacher retirement benefits based on the expert report of Dr. Robert C. Eisenstadt, Ph.D. and referenced "Powell Supp. Exhibit 49." The district court's judgment failed to award a sum certain, and its reference to Dr. Eisenstadt's expert report is not allowed in a final appealable judgment.

---

[3] RPSB's Assignment of Error Number 5, which was urged in the alternative, has been addressed by this court previously and is moot.

A panel of this court in *Thomas v. Lafayette Parish Sch. Sys.*, 13-91, p. 2 (La.App. 3 Cir. 3/6/13), 128 So.3d 1055, 1056 (emphasis added) stated:

> However, we note that this court has stated that "[a] valid judgment must be precise, definite, and certain. A final appealable judgment must contain **decretal language**, and it must name the party in favor of whom the ruling is ordered, the party against whom the ruling is ordered, and the relief that is granted or denied." *State v. White*, 05-718 (La.App. 3 Cir. 2/1/06), 921 So.2d 1144, 1146. Moreover, a judgment cannot require reference to extrinsic document or pleadings in order to discern the court's ruling. *Vanderbrook v. Coachmen Industries, Inc.,* 01-809 (La.App. 1 Cir. 5/10/02), 818 So.2d 906.

Therefore, for the foregoing reasons, the portion of the district court's judgment of October 19, 2016, awarding damages to Ms. Powell is remanded to the district court for a determination of the exact amount of damages awarded, along with appropriate interest and costs to Ms. Powell with proper decretal language.

## CONCLUSION

For the foregoing reasons, the district court's judgment of October 19, 2016, reversing the termination, as of September 20, 2001, of former teacher Patricia Ellyn Powell by the Rapides Parish School Board is affirmed. The portion of the district's court's judgment awarding damages to Patricia Ellyn Powell is remanded to the district court for a proper assessment of damages and execution of a final judgment with proper decretal language. All costs of this appeal are assessed to the Rapides Parish School Board.

**AFFIRMED IN PART AND REMANDED IN PART.**